Phillips v. Audio Active Ltd.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued October 26, 2006          Decided July 24, 2007)

Docket No. 05-7017-cv

_____

PETER PHILLIPS, professionally known as Pete Rock,

Plaintiff-Appellant,

v.

AUDIO ACTIVE LIMITED, trading as Barely Breaking Even,
STUDIO DISTRIBUTION and SANDBOX AUTOMATIC, INC.,

Defendants-Appellees,

HIPHOPSITE.COM,

Defendant.

_____

Before:
CARDAMONE, WALKER, and STRAUB,
Circuit Judges.

_____

Peter Phillips, p/k/a Pete Rock, appeals the November 30, 2005 decision and order and the December 8, 2005 final judgment of the United States District Court for the Southern District of New York (Daniels, J.) dismissing his complaint against defendant music companies for improper venue under Federal Rule of Civil Procedure 12(b)(3).

Affirmed in part, reversed in part, and remanded.

_____

_____

PAUL A. CHIN, Law Offices of Paul A. Chin, New York, New York, for Plaintiff-Appellant.

DOROTHY M. WEBER, New York, New York (Judith A. Meyers, Shukat Arrow Hafer Weber & Herbsman, LLP, New York, New York, of counsel), for Defendants-Appellees.

_____

CARDAMONE, Circuit Judge:

A plaintiff may think that as the initiator of a lawsuit he is the lord and master of where the litigation will be tried and under what law. But if he is a party to a contract that contains forum selection and choice of law clauses his view of himself as ruler of all he surveys may, like an inflated balloon, suffer considerable loss of altitude. Such is the situation plaintiff faces in the appeal before us, where we revisit an issue last addressed by us 15 years ago: what is the effect of a forum selection clause on a complaint that asserts claims arising under the Copyright Act? See Corcovado Music Corp. v. Hollis Music, Inc., 981 F.2d 679 (2d Cir. 1993).

Plaintiff Peter Phillips, professionally known as Pete Rock (plaintiff or appellant), is a musician who in 2002 entered into a recording contract with defendant Audio Active Limited t/a Barely Breaking Even (BBE), a music company. This contract gave fruit to two albums in 2004 and 2005. The first album all agree was governed by the recording contract and, except for Phillips' contention that BBE owes him money, it appears to have been produced, released and distributed according to plan. The second album is the source of the principal controversy between the parties.

In his complaint against BBE and defendants Studio Distribution (Studio), Navarre Corporation (Navarre), HipHopSite.com and Sandbox Automatic, Inc. (Sandbox) (collectively defendants), Phillips averred that the recording

2

contract contemplated the first album only, and that the release of the second album, over his objections, infringed his copyrights in the 15 songs comprising the album. BBE and Studio moved to dismiss plaintiff's complaint on the basis of a forum selection clause in the contract pursuant to which the parties had agreed to litigate in England any proceeding arising out of the contract.

The United States District Court for the Southern District of New York (Daniels, J.) held the forum clause governed Phillips' action, including his copyright claims relating to the second album. Phillips appeals from the district court's November 30, 2005 decision and order and its December 8, 2005 judgment granting BBE and Studio's Rule 12(b)(3) motion to dismiss his complaint for improper venue. Plaintiff contends that the district court erred in reading the forum clause to require -- rather than permit -- proceedings to be brought in England, that his copyright claims did not arise out of the recording contract and should have been exempted from operation of the forum clause, and that the clause should be set aside because its enforcement would be unreasonable.

We agree with the district court's interpretation of the clause as mandatory and its holding that enforcement of the clause would not be unreasonable and affirm the dismissal of Phillips' breach of contract claim. However, plaintiff's remaining claims predicated on defendants' alleged infringement

3

of his copyrights were improperly dismissed under the forum selection clause.

BACKGROUND

A. The Recording Contract

Phillips entered into the recording contract with BBE in September 2002 under the terms of which he agreed to provide his services as a recording artist and producer to create musical compositions, and BBE agreed to pay the costs of production and to pay royalties to Phillips, including a $90,000 advance payable in two installments.

The contract required Phillips to produce "no less than ten (10) newly recorded and previously unreleased tracks . . . of no less than sixty (60) minutes" and defined these tracks as the "master recordings." The minimum number of tracks was not paired with a maximum anywhere in the contract, but the master recordings were later defined as the album, which was provisionally entitled "Soul Survivor 2." BBE acquired the right to exploit all products of Phillips' services under the contract and the entire copyright in the master recordings. The final paragraph of the recording contract contains a choice of law and forum clause that reads: "[t]he validity[,] construction[,] and effect of this agreement and any or all modifications hereof shall be governed by English Law and any legal proceedings that may arise out of it are to be brought in England." Phillips also signed a letter agreement, which is attached to the recording contract, authorizing Soul Brother Records, Inc. to offer

4

Phillips' services under the contract and stating that the letter agreement "shall be subject to the same laws and exclusive jurisdiction as the above agreement."  Phillips received $55,000 from BBE in a first installment of his advance on royalties. Pursuant to the contract, the balance of the advance was payable upon delivery to BBE of the last of the master recordings.

## B.  Release of Second Album

In 2004 BBE released an album comprised of Phillips' musical compositions entitled, as foreseen in the contract, Soul Survivor 2.  While Phillips was preparing the songs that were released on Soul Survivor 2, he composed and recorded additional music. Plaintiff alleges that in 2004, BBE and Studio, a second recording company, sought his permission to release the additional songs, but Phillips, believing the tracks were not ready for release, denied their request.  BBE, Studio and Navarre, a distribution company, nonetheless proceeded to release a second album in August or September of 2004 containing 15 additional songs created by Phillips.  Phillips asserts that Sandbox and HipHopSite.com, both Internet-based distributors of digital media, sold copies of the allegedly infringing album. Plaintiff settled his claims against HipHopSite.com and these were dismissed with prejudice by the district court on May 3, 2005.

## C.  Prior Legal Proceedings

Plaintiff commenced the instant action in the Southern District of New York on January 26, 2005.  His second amended

5

complaint contained five counts against the defendants. Count One stated that BBE had breached the recording contract by failing to pay the second installment of the royalties advance. Counts Two and Three were for direct and contributory copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., and requested remedies provided by the Act. Counts Four and Five asserted alternative state law claims for unjust enrichment and unfair competition on the basis of defendants' exploitation of the additional tracks.

On May 27, 2005 BBE and Studio moved to dismiss under Rules 12(b)(1), (3) and (6) on the grounds that the forum selection clause in the recording contract required Phillips to bring his suit in England. In a decision and order dated November 30, 2005 and a final judgment dated December 8, 2005, the trial court granted BBE and Studio's motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). The district court classified the forum selection clause as mandatory rather than permissive, and it held that Phillips had failed to show that enforcement of the clause would be unreasonable. With respect to plaintiff's copyright claims, Judge Daniels determined that any dispute concerning the defendants' rights to exploit this music was primarily contractual because the defendants had acquired possession of the music legitimately under the contract. Phillips appeals the November 30, 2005 decision and order and the December 8, 2005 final judgment.

6

DISCUSSION

I   Forum Selection Clause

A.   Dismissal

Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis.  The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  See, e.g., D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).  The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so.  See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 53 (2d Cir. 1994).  Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.  See, e.g., Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1358-61 (2d Cir. 1993).

If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.  See id. at 1362-63.  The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972) (establishing federal standard relating to enforcement of forum clauses applicable in admiralty

7

and international transactions); see Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718, 721 (2d Cir. 1982) (applying Bremen standard to contractual dispute between domestic parties in non-admiralty context).

## B.  Standard of Review

Where the district court has relied on pleadings and affidavits to grant a Rule 12(b)(3) motion to dismiss on the basis of a forum selection clause, our review is de novo.  See Asoma Corp. v. SK Shipping Co., 467 F.3d 817, 822 (2d Cir. 2006); Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (adopting standard applied in Rule 12(b)(2) dismissals to review of Rule 12(b)(3) dismissals).  In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, we view all the facts in a light most favorable to plaintiff. See New Moon Shipping Co. v. Man B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997).  Contract interpretation as a question of law is also reviewed de novo on appeal.  Lee v. BSB Greenwich Mortgage L.P., 267 F.3d 172, 178 (2d Cir. 2001).

## C.  Impact of Choice of Law Clause

In the absence of an applicable choice of law provision, it is well established in this Circuit that the rule set out in M/S Bremen applies to the question of enforceability of an apparently governing forum selection clause, irrespective of whether a claim arises under federal or state law.  AVC Nederland B.V. v. Atrium Inv. P'ship, 740 F.2d 148, 156 (2d Cir. 1984) (applying M/S Bremen in federal question case); Bense, 683 F.2d at 720-21

8

(same); <u>Jones v. Weibrecht</u>, 901 F.2d 17, 18-19 (2d Cir. 1990) (reaffirming Second Circuit rule that <u>Bremen</u> standard applies to diversity cases).

Here, where the parties have agreed that the validity, construction and effect of the recording contract is to be governed by English law, we confront a different legal issue. In analyzing a forum selection clause, what effect should we give to a choice of law provision contained in the same contract? Largely for the reasons we hold parties to their contractual promises to litigate in a specified forum, federal courts give substantial weight to choice of law provisions. See <u>Roby</u>, 996 F.2d at 1362-63 (discussing presumptive validity of choice of law clauses in international transactions); <u>State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld</u>, 921 F.2d 409, 417 (2d Cir. 1990) ("[A] contractual choice of law clause generally takes precedence over choice of law rules . . . ."); <u>Richards v. Lloyd's of London</u>, 135 F.3d 1289, 1292-93 (9th Cir. 1998) (extending <u>Bremen</u> standard to evaluation of choice of law clauses). But see <u>Advani Enters., Inc. v. Underwriters at Lloyds</u>, 140 F.3d 157, 162 (2d Cir. 1998) (incorporating choice of law provision into multi-factor test to determine "points of contact" between transaction and potential fora in admiralty case).

Despite the presumptive validity of choice of law clauses, our precedent indicates that federal law should be used to determine whether an otherwise mandatory and applicable forum

9

clause is enforceable under Bremen, i.e., step four in our analysis. This is because enforcement of forum clauses is an essentially procedural issue, Jones, 901 F.2d at 19, while choice of law provisions generally implicate only the substantive law of the selected jurisdiction. See Siegelman v. Cunard White Star, 221 F.2d 189, 194 (2d Cir. 1955); cf. Woodling v. Garrett Corp., 813 F.2d 543, 551-52 (2d Cir. 1987) (explaining New York rule honoring parties' choice of law to govern substantive but not procedural issues). Were it otherwise, choice of law provisions selecting jurisdictions that disfavor forum clauses would put a district court to the awkward choice of either ignoring the parties' choice of law or invalidating their choice of forum. See, e.g., Bense, 683 F.2d at 722 (declining to apply law specified in contract where such application would render the forum selection clause meaningless).

We find less to recommend the invocation of federal common law to interpret the meaning and scope of a forum clause, as required by parts two and three of our analysis. Little discussion of the issue can be found in federal court decisions. See Yavuz v. 61 MM, Ltd., 465 F.3d 418, 427 (10th Cir. 2006). For example, we have turned to federal precedent to interpret forum clauses, but the underlying choice of law question has been left unaddressed. See, e.g., Boutari, 22 F.3d at 52-53 (applying federal precedent to ascertain meaning of forum clause where parties had elected Greek law); Roby, 996 F.2d at 1361 (applying federal precedent to assess scope of clause where parties had

10

chosen English law); see also Manetti-Farrow Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988) ("[B]ecause enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses."). But see AVC Nederland, 740 F.2d at 155 (noting that interpretation of Dutch-language forum selection clause in contract among predominantly Dutch principals executed in the Netherlands required application of Dutch law). See generally Jacob Webb Yackee, Choice of Law Considerations in the Validity & Enforcement of International Forum Selection Agreements: Whose Law Applies?, 9 UCLA J. Int'l L. & Foreign Aff. 43, 67 (2004) (describing practice of federal courts reflexively to disregard choice of law provisions when assessing forum selection clauses); Yavuz, 465 F.3d at 427 (same).

The Tenth Circuit recently discussed the novel question posed by contracts containing choice of law and forum provisions. Yavuz, 465 F.3d at 427-31. Reviewing a clause reading, "[t]his convention is governed by the Swiss law . . . . Place of courts is Fribourg," id. at 427, the court noted that before deciding whether to enforce the clause, it had to resolve several subsidiary questions: whether the clause was mandatory or permissive, and whether it governed all of plaintiff's claims. Id. Yavuz observed that the Supreme Court's guidance on forum clauses did not extend to the choice of law question before it (and now before us) because the meaning of each forum or

11

arbitration provision before the Supreme Court in M/S Bremen and its progeny has never been in question. Id. at 430.

In light of the Supreme Court's invocation of compelling reasons to uphold contractual choice of law -- like choice of forum -- provisions, Yavuz held that "under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision as construed under the law specified in the agreement's choice of law provision," id. at 428-30; see also Abbott Labs. v. Takeda Pharm. Co., 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity and meaning of a forum selection clause . . . by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears.").

Without the benefit of briefing by the parties on this issue, we cannot understand why the interpretation of a forum selection clause should be singled out for application of any law other than that chosen to govern the interpretation of the contract as a whole. See Yavuz, 465 F.3d at 428. However, the parties neither objected to the district court's citation to federal precedent in its interpretation of the clause before us, nor construed the clause under English law in their briefs. We will assume from the parties' briefing that they do not rely on any distinctive features of English law and apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause. See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs

12

assume that New York law controls this issue, and such implied consent . . . is sufficient to establish choice of law."); John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.) (applying general contract law principles to interpret forum clause where parties made little reference to English law).

## II    The Forum Clause Requires that any Covered Proceeding Be Brought in England

Forum selection clauses may serve two distinct purposes. Contracting parties may intend to agree on a potential situs for suit so as to guarantee that at least one forum will be available to hear their disputes.  A so-called permissive forum clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate.  See Boutari, 22 F.3d at 53 (reversing dismissal based on permissive choice of forum clause); AVC Nederland, 740 F.2d at 155 ("[A] jurisdiction-conferring clause . . . provid[es] a plaintiff with a guaranteed forum, [but] does not deprive him of the right to sue in another having personal jurisdiction over the defendant."); see also Blanco v. Banco Indus. de Venez., S.A., 997 F.2d 974, 980, 984 (2d Cir. 1993) (granting motion for dismissal based on inconvenient forum despite permissive choice of forum clause specifying forum chosen by plaintiff). Alternatively, contracting parties may intend to agree in advance on a forum where any and all of their disputes must be brought to eliminate surprise of having to litigate in a hostile forum.

13

Roby, 996 F.2d at 1363. A mandatory forum clause is entitled to the Bremen presumption of enforceability. Id.

Our inquiry is one of contract interpretation. Hence, our initial focus is on the language of the contract. Here that language provides that "any legal proceedings that may arise out of [the agreement] are to be brought in England." A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language. See Boutari, 22 F.3d at 52-53.

The district court found this clause mandatory. We agree. The parties' use of the phrase "are to be brought" establishes England as an obligatory venue for proceedings within the scope of the clause. The reference to a particular location, although lacking the specificity of a particular court or city, adequately distinguishes the parties' language from the clause we reviewed in Boutari. 22 F.3d at 52. In that case, we construed the phrase "[a]ny dispute . . . shall come within the jurisdiction of the . . . Greek Courts" as a permissive clause because it dealt solely with jurisdiction without indicating that such jurisdiction was exclusive. Id. at 52-53. We recognized in Boutari that obligatory venue language suffices to give mandatory force to a forum selection clause. Id. at 53; see Seward v. Devine, 888 F.2d 957, 962 (2d Cir. 1989); Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989). Further, the mandatory force of the words "are to be" differentiates the instant clause from the language used by the parties in Blanco,

14

agreeing to certain fora in which their disputes "may" be brought. 997 F.2d at 976, 979.

Our distinct treatment of jurisdiction and venue in this context is clear. Because jurisdiction may be properly conferred on two or more fora, the fact that the contract in Boutari conferred jurisdiction on the courts of Greece did not preclude the parties from commencing litigation in a court outside of Greece. 22 F.3d at 52-53. However, contract language such as that presented in this case -- mandating that a proceeding be brought in England -- is incompatible with venue lying in New York. Our finding that the clause is mandatory is buttressed by the stipulation in the letter agreement attached to the recording contract that the former is subject to the same exclusive jurisdiction as the latter.

III  Scope of the Forum Selection Clause In the Instant Case

We turn now to decide whether the language in the recording contract mandating that any legal proceedings that may arise out of it be brought in England encompasses Phillips' suit. However important a forum selection clause is to the efficient functioning of international business, see, e.g., Scherk v. Alberto-Culver Co., 417 U.S. 506, 516-17 (1974), it is a creature of contract. Plaintiff's choice of forum in bringing his suit in federal court in New York will not be disregarded unless the contract evinces agreement by the parties that his claims cannot be heard there. Cf. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (noting

15

that an arbitration clause, a creature of contract, does not compel arbitration of a dispute that parties did not intend to submit to arbitration).

## A.  Breach of Contract Claim

We dispose of the contract claim quickly.  Phillips asserts BBE breached the recording contract by failing to pay the second installment on his advance on royalties due upon delivery of the master recordings.  He makes no argument that the forum selection clause, if found mandatory and enforceable, does not apply to his contract claim.  The contract claim for money owed  and due falls squarely under the forum selection clause:  the contract establishes Phillips' right to receive, and BBE's duty to pay, the installment and sets forth the relevant conditions.

## B.  Federal Copyright Infringement Claims

The effect of the forum selection clause on Phillips' copyright claims presents a more difficult question.  The language of that clause frames our question:  Do Phillips' copyright claims arise out of the recording contract?

Plaintiff implicitly offers a straightforward argument of mutual exclusivity:  Because his copyright infringement claims arise under the Copyright Act, they cannot arise out of the contract.  In T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964) (Friendly, J.), we held a claim arises under the Copyright Act and accordingly falls within the jurisdiction of the federal courts if "the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties

16

for record reproduction." Id. at 828; see Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 349, 355 (2d Cir. 2000) (reaffirming Harms test in federal jurisdiction context). Counts Two and Three of Phillips' complaint allege direct and indirect copyright infringement and request remedies under § 504 of the Copyright Act, 17 U.S.C. § 504. We agree these claims arise under the Copyright Act. Thus, federal jurisdiction is properly invoked. See Kamakazi Music Corp. v. Robbins Music Corp., 684 F.2d 228, 229 (2d Cir. 1982) (holding defendant's interposition of a contract as defense to copyright claims did not transform copyright suit into breach of contract action).

The relevance of Harms to the present inquiry is where we part from appellant. Despite its surface appeal, we are not persuaded by Phillips' suggestion that a claim arising under the Copyright Act for jurisdictional purposes cannot also "arise out of" a contract for purposes of interpreting a forum selection clause.

1. Federal Courts Have Repeatedly Found Statutory Claims to "Arise out of" Contract in Interpreting Scope of Contractual Provisions

Insofar as Harms relies on the law invoked by the plaintiff to state his claims, it is anchored in doctrines that have long governed our exercise of "arising under" jurisdiction under 28 U.S.C. § 1331, whereby "[a] suit arises under the law that creates the cause of action," Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916) (Holmes, J.), and federal jurisdiction is proper where the complaint "is so drawn as to

17

seek recovery directly under the Constitution or laws of the United States," Bell v. Hood, 327 U.S. 678, 681 (1946).

Looking to cases involving similar contractual provisions and claims under other laws of the United States, we see that federal courts have routinely rejected Phillips' suggestion that a claim arising under a law of the United States is exempt from provisions governing disputes between contracting parties. See, e.g., Scherk, 417 U.S. at 508-09, 520-21 (holding that claim under Securities Exchange Act was covered by arbitration clause in international contract governing "any controversy or claim [arising] out of this agreement or the breach thereof"); Bense, 683 F.2d at 720 (finding complaint brought under federal antitrust law arose from distribution agreement between parties); Abbott Labs., 476 F.3d at 424 (rejecting plaintiff's argument that breach of fiduciary duty claim arising under Delaware tort law did not arise from the contract).

Moreover, it is inappropriate in the present context to depend solely on the legal labels used by plaintiff to decide if his case arises out of the contract. When the question is one of federal jurisdiction, we recognize the plaintiff is in charge of deciding what law he will rely upon in bringing suit, Bell, 327 U.S. at 681; see Bassett, 204 F.3d at 355. It follows that legal causes of action stated by plaintiff afford all the information we need to decide whether "arising under" jurisdiction lies. It does not follow that plaintiff is the master to decide the meaning of a disputed contractual provision, which is, in effect,

18

what appellant suggests in asking us to hold that his claims do not arise out of the recording contract based solely on the laws he cites in his complaint. Phillips' proposed approach is inconsistent with our refusal in Roby to allow "a party's solemn promise to be defeated by artful pleading." 996 F.2d at 1360.

Instead, when ascertaining the applicability of a contractual provision to particular claims, we examine the substance of those claims, shorn of their labels. Id. at 1361. This approach is consistent with the focus on factual allegations rather than on the causes of action asserted when deciding whether an arbitration clause applies to particular claims. See JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 173 (2d Cir. 2004); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987).

Because we cannot presume that the parties intended to exclude all statutory claims, or even all copyright claims, from the forum selection clause, we examine the substance of Phillips' claims as they relate to the precise language of the clause. See New Moon, 121 F.3d at 33 ("The scope of the forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties."); Wyeth, 119 F.3d at 1075 ("[W]hether or not a forum selection clause applies depends on what the specific clause at issue says.").

19

## 2.  Meaning of "Arise Out Of"

To "arise out of" means "to originate from a specified source," Webster's Third New International Dictionary 117 (1981); see Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001), and generally indicates a causal connection, Coregis, 241 F.3d at 128.

We do not understand the words "arise out of" as encompassing all claims that have some possible relationship with the contract, including claims that may only "relate to," be "associated with," or "arise in connection with" the contract. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 644 (1985) (Stevens, J., dissenting) (distinguishing between scope afforded by phrases "arise" out of and "in relation to"); Coregis, 241 F.3d at 128-29; Wyeth, 119 F.3d at 1074 (reasoning that "arising in relation to" is broader than "arising under"); but cf. Roby, 996 F.2d at 1361 (declining to differentiate between phrases "relating to," "in connection with," and "arising from" and holding that broadly worded clause encompassed non-contract claims).

In the same vein, we decline to ascribe to these three words the expansive connotations set out in Omron Healthcare, Inc. v. Maclaren Exps. Ltd., 28 F.3d 600 (7th Cir. 1994), where the Seventh Circuit enforced a substantially similar forum selection clause in a comparable factual scenario.  In Omron, the Seventh Circuit enforced a forum clause covering "all disputes arising out of" a contract against the plaintiff-distributor who had

20

brought suit alleging that the defendant-manufacturer continued to sell merchandise bearing the plaintiff's trademark after the distribution agreement between the parties had terminated. Id. at 601-04. The Omron court reasoned that "all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement." Id. at 603.

The scope attributed by the Seventh Circuit to the words "arise out of" was adopted from its interpretation of arbitration clauses. Id. at 603. Like the Seventh Circuit, typically we view phrases similar to "arise out of" in arbitration clauses to cover collateral matters that implicate issues of contract construction. See Louis Dreyfus, 252 F.3d at 224-25. Unlike the court in Omron, we decline to import whole the interpretive guidelines developed by the federal courts to assess the scope of arbitration clauses into the present context. See Omron, 28 F.3d at 603.

Our assessment of the scope of arbitration clauses is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., which establishes "as a matter of federal law" that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including where "the problem at hand is the construction of the contract itself." Mitsubishi, 473 U.S. at 626. "[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," the federal courts are obliged to find a particular claim falls within the scope of an

21

arbitration clause. <u>Genesco</u>, 815 F.2d at 847 (quoting <u>S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.</u>, 745 F.2d 190 (2d Cir. 1984)).

While we do not overlook the Supreme Court's emphatic endorsement of freely negotiated and reasonable forum selection clauses, <u>see</u>, <u>e.g.</u>, <u>M/S Bremen</u>, 407 U.S. at 13-14, or our own commitment to enforcing applicable forum clauses, <u>see</u>, <u>e.g.</u>, <u>Roby</u>, 996 F.2d at 1362-63, the absence of a congressional policy on forum clauses prompting us to err on the side of coverage is significant.

Specifically, we see no reason to presume the parties meant anything other than the dictionary definition of the term: to originate from a specified source. Webster's Third New International Dictionary 117 (1981). This meaning is especially likely where parties wishing to designate a mandatory forum to hear a broader category of disputes are free to do so. <u>See</u>, <u>e.g.</u>, <u>M/S Bremen</u>, 407 U.S. at 2 ("Any dispute arising must be treated before the London Court of Justice."); <u>Abbott Labs.</u>, 476 F.3d at 422 (designating a mandatory forum for "a dispute . . . arising from, concerning or in any way related to this Agreement").

Further, we approve of the approach outlined by the Third Circuit, which highlights the language-specific nature of this inquiry and discounts the precedential weight of cases that deal with dissimilarly worded clauses. <u>Wyeth</u>, 119 F.3d at 1075 ("Drawing analogy to other cases is useful only to the extent

22

those other cases address contract language that is the same or substantially similar to that at issue.").

### 3. Phillips' Federal Copyright Claims

With the preceding discussion on the scope of the forum selection clause as background, we turn now to ascertain whether Phillips' copyright claims originate from the recording contract. The substance of Phillips' claims for direct and contributory copyright infringement is that the defendants impermissibly manufactured and distributed songs to which Phillips retained a valid copyright. To succeed on a claim for direct infringement under the Copyright Act, a plaintiff must show that (a) he owned a valid copyright to the songs and (b) defendants copied original constituent elements of these songs. See Fonar Corp. v. Domenick, 105 F.3d 99, 103 (2d Cir. 1997); see also Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971) (stating that claim for contributory copyright infringement requires additional element that defendants, with knowledge, induce, cause or materially contribute to infringing conduct of another).

To decide whether Phillips' copyright claims arise out of the agreement, we are therefore required to determine if Phillips' rights -- here predicated on valid ownership of the copyrights to the 15 songs -- originate from the recording contract. We hold they do not. Appellant does not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work, a status afforded

23

him as the composer who translates an idea into a fixed, tangible musical expression entitled to copyright protection. Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989); see also 17 U.S.C. §§ 102(a), 201(a). Plaintiff asserts, not implausibly -- there is no suggestion of bad faith on his part -- that he has been the rightful owner of the copyrights from the moment the songs became entitled to copyright protection. The uninterrupted nature of his asserted ownership distinguishes Phillips' case from one in which a plaintiff-creator asserts that the relevant copyrights reverted to him upon breach of contract by the defendants. See Howard B. Abrams, 2 The Law of Copyright, § 13:13 (2006) (distinguishing factual scenarios in which plaintiffs' copyright/contract claims may arise). Indeed, if Phillips were to succeed in persuading the trial court of his interpretation of the recording contract, success on the merits of his copyright claims would leave the recording contract undisturbed.

In reasoning that Phillips' copyright claims do not arise out of the contract because Phillips has asserted no rights or duties under that contract, we find support in our decision in Corcovado. 981 F.2d at 681-83. In that case, a musician entered into two contracts, one with a publisher (predecessor of the defendants) assigning original term copyrights to five songs, and another with the plaintiff assigning the renewal term copyrights. Id. at 680-81. When the plaintiff brought suit in federal court alleging infringement of its renewal term copyrights, the

24

defendants moved to dismiss on the basis of the forum selection clause contained in their separate contract with the musician. Id. at 681. We affirmed the denial of the motion and held that the forum clause, contained in a contract that was relevant only as a defense, was without effect. Id. at 682-83.

Here too, while the defendants are expected to invoke the contract, Phillips denies that the contract has any role or relevance whatever with respect to his copyright claims. See Cheever v. Acad. Chicago Ltd., 685 F. Supp. 914, 916-17 (S.D.N.Y. 1988); cf. Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action."). Because the recording contract is only relevant as a defense in this suit, we cannot say that Phillips' copyright claims originate from, and therefore "arise out of," the contract.

In Corcovado, neither party had signed the contract containing the forum clause. 981 F.2d at 682. While this circumstance facilitated our ruling the plaintiffs' claims were wholly independent of the contract, non-signatory status is not dispositive of the question of applicability of a forum clause to a plaintiff's claims. See id. (citing with approval district court decision that held that forum clause had no effect on signatory who asserted no rights under the contract).

The recording contract, as already noted, mandates that any legal proceedings that may arise out of it be brought in England.

25

We do not construe the reference to proceedings, as opposed to claims, as requiring us to take into consideration the source of rights or duties asserted on defense. But see Wyeth, 119 F.3d at 1074 (reasoning that reference to dispute in forum clause implicates broader reach than reference to claim); Abbott Labs., 476 F.3d at 424 (same). The clause speaks only to where a proceeding is brought and thus obligates the party who brings the suit (or other claims, see Karl Koch Erecting Co. v. N.Y. Convention Ctr. Dev., 838 F.2d 656, 659 (2d Cir. 1988)) to decide where his suit may be heard. In most cases the plaintiff cannot divine, or anticipate, the defenses, or any other legal action, that may be interposed by another party to the suit.

Moreover, the proceedings on the copyright infringement claims here do not originate from the recording contract; the proceedings may begin in court without any reference to the contract. The only nexus between the proceedings and the contract arises when the defendants raise their defenses. Given this sequence of events, one cannot say that the origins of the proceedings were in the recording contract.

Our focus on the source of the rights or duties sought to be enforced by the complaining party allows us to distinguish the only precedent cited by defendants where we addressed a similarly worded forum clause. Bense, 683 F.2d at 720 (reviewing dismissal on basis of clause covering "any suits or causes of action arising directly or indirectly from this [agreement]"). In Bense, the plaintiff could only show injury by demonstrating that

26

the defendant had breached the contract by terminating without due cause. The contract containing the forum clause was the source of the right, duty and injury asserted by the plaintiff and we accordingly held the clause to govern his claims. Id. at 721-22. Such reasoning has no application to the case at hand. As a consequence, we conclude Phillips' copyright claims did not originate in the recording contract and are therefore not governed by the forum selection clause.

## C. Phillips' State Law Claims

Phillips has asserted two alternative causes of action under state law for unjust enrichment and unfair competition. Both are premised on defendants' allegedly improper exploitation of the 15 songs. For the reasons just discussed in relation to appellant's federal copyright claims, his state law claims do not originate from the recording contract and are exempt from operation of the forum selection clause.

On remand, the district court should determine whether one or both of Phillips state law claims are preempted by the Copyright Act. See generally Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 304-06 (2d Cir. 2004) (setting forth preemption doctrine as applied to copyright claims). We think it likely, without deciding, that they are. See id. at 306 (finding plaintiff's unjust enrichment claim under New York law preempted by Copyright Act); Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716-17 (2d Cir. 1992) (stating that unfair competition claims grounded solely on copying are

27

preempted); <u>Warner Bros. Inc. v. Am. Broad. Cos.</u>, 720 F.2d 231, 247 (2d Cir. 1983) (same as <u>Briarpatch</u>).

The district court may of course properly exercise supplemental jurisdiction over any state law claim surviving preemption, but the decision to decline such jurisdiction pursuant to 28 U.S.C. § 1367(c) is left to its discretion, <u>see</u> <u>Briarpatch</u>, 373 F.3d at 308.

#### IV    Enforcement of the Forum Selection Clause to Dismiss Contract Claim Was Not Unreasonable

Under <u>M/S Bremen</u>, dismissal of Phillips' breach of contract claim is proper unless appellant makes a prima facie showing that the clause should be set aside.  407 U.S. at 15; <u>see</u> <u>New Moon</u>, 121 F.3d at 29 (holding at initial stage of litigation plaintiff required to show prima facie that chosen forum is proper).  We have explained that a forum clause is enforceable unless (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.  <u>Roby</u>, 996 F.2d at 1363.

Phillips does not contend the first three circumstances are present here.  His argument, under the fourth factor, is that none of his witnesses, documents, or any parties to the action are located in England, rendering litigation in that country impossible.  Appellant also notes that defendants have proffered

28

no evidence that their relevant documents or witnesses are located in England.

The gap in Phillips' reasoning is that his averments suggest that litigation in England may be more costly or difficult, but not that it is impossible. He has not alleged any circumstances -- whether affecting him personally or a component of his case or prevailing in England generally -- that would prevent him from bringing suit in England. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 10-11 (2d Cir. 1995) (enforcing clause requiring U.S. citizen to litigate in Greece and noting that the distance between a selected forum and pertinent parties or places did not render a forum inconvenient if readily accessible by air travel). In addition, Phillips has not declared any of his claimed hardships are other than the obvious concomitants of litigation abroad, id. at 10, or were not foreseeable when he agreed to litigate in England. M/S Bremen, 407 U.S. at 16.

In light of our holding that only Phillips' breach of contract claim, which is levied against defendant BBE, is subject to the forum clause, we do not address Phillips' contention that the clause is inoperative against the remaining defendants who were not signatories to the recording contract.

V  Separate Treatment of Separate Claims Is Appropriate Where Some But Not All Claims Are Subject to the Clause

Analyzing separately each claim asserted by Phillips, we have held that Phillips' federal copyright claims and state law claims are outside the ambit of the forum clause, while his

29

contract claim is subject to it.  We address finally whether it is proper in these circumstances to dismiss one claim and retain jurisdiction over others.

We are aware that the commencement of separate proceedings in two countries is a likely inconvenience to the parties and that they, in choosing to refer to proceedings instead of claims, may have intended to bundle all claims constituting any proceeding to avoid fractured litigation.  We have considered that the parties' intent and continued interests may lie in treating Phillips' five claims uniformly, but our twin commitments to upholding forum selection clauses where these are found to apply and deferring to a plaintiff's proper choice of forum constrain us in the present context to treat Phillips' claims separately.  Cf. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (holding that district courts are required to compel arbitration of claims subject to arbitration clause "even if the result is 'piecemeal' litigation").

CONCLUSION

Accordingly, for the foregoing reasons, we affirm the dismissal of Phillips' breach of contract claim, reverse the dismissal of his remaining claims, and remand the case to the district court for further proceedings consistent with this opinion.

30