07-2273-cv
Gessler, et al. v. Sobieski Destylarnia, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: September 22, 2008          Decided: July 13, 2009

Docket No. 07-2273

ALTVATER GESSLER-J.A. BACZEWSKI INTERNATIONAL (USA)
Inc. and ALTVATER GESSLER-J.A. BACZEWSKI GmbH,

*Plaintiffs-Counter-Defendants-Appellants*,

v.

SOBIESKI DESTYLARNIA S.A. and INTERNET WINES & SPIRITS,
INC. and DOES 1-20,

*Defendants-Appellees*,

ADAMBA IMPORTS INTERNATIONAL,

*Defendant-Counter-Claimant-Appellee*.

_____

_____

Before: WESLEY, HALL, and GIBSON,[1] *Circuit Judges*.

Appeal from an order of the United States District Court for the Southern District of New York (Harold Baer Jr., *District Judge*, presiding), entered on May 2, 2007, granting Defendants-Appellees' motion to dismiss for improper venue and dismissing action in its entirety against all defendants. The district court found that the Plaintiffs were bound by valid and enforceable forum selection clauses which specified venue in

[1]The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Poland.  We conclude that Gessler's claims are not subject to the forum selection clauses at issue and remand for further proceedings.

_____

CHRISTOPHER L. DEININGER, *for Plaintiffs-Counter-Defendants-Appellants*.

JAMIE D. UNDERWOOD, *for Defendants-Appellees*.

_____

JOHN R. GIBSON, <u>Circuit Judge</u>.

BACKGROUND[2]

Plaintiffs-Appellants Altvater Gessler-J.A. Baczewski International (USA) Inc. ("Gessler USA")and Altvater Gessler-J.A. Baczewski GmbH ("Gessler GmbH") (collectively "Gessler") are closely held corporations owned by members of the Gessler family. Gessler is the corporate continuation of two businesses that have manufactured and sold alcoholic beverages since the 1700s.  Among the products Gessler manufactures and distributes is a honey liqueur known as krupnik, which is made using a one-hundred-year-old secret family recipe.  Gessler registered the word "KRUPNIK" as a trademark with the Austrian Patent Office in 1960, and has

_____

[2]Because Gessler appeals an order granting Defendants-Appellees' motion to dismiss, the facts are stated in the light most favorable to Gessler.

2

marketed krupnik in the United States and elsewhere in the world since the early 1960s. During the 1990s, Gessler USA entered into two written agreements with a Polish company, Polmos, authorizing it to produce krupnik using the secret Gessler family recipe. These licensing agreements, entered into in 1991 and 1996, contain forum selection clauses stating that any disputes arising out of the agreements would be resolved by the Economic Court in Gdansk, Poland, under Polish law.[3] These licensing

---

[3]The agreements were executed in Polish and both parties have provided English translations. Gessler's translations of the relevant clauses read as follows:

[1991 Agreement:]
    §9 Any disputes resulting from this agreement will be
    adjudicated according to Polish law by the Economic
    Court in Gdansk.
    §10 In matters not regulated by this agreement the
    rules of the Civil Code and the obligatory laws
    concerning trademarks will apply.
[1996 Agreement:]
    §24 Any disputes resulting from this agreement will be
    adjudicated according to Polish law by the Economic
    Court in Gdansk.
    §25 In matters not regulated by this agreement the
    rules of the Civil Code will apply as well as the
    obligatory laws concerning trademarks.

Sobieski has translated the agreements somewhat differently:

[1991 Agreement:]
    §9 Any disputes concerning this agreement will be
    settled in accordance with the Polish law by the
    Economic Court in Gdansk.
    §10 To issue[s] not regulated by this agreement,
    provisions of the Civil Code and the current Trademark
    Act apply.
[1996 Agreement:]
    Article 24 Any disputes resulting from this Agreement
    shall be resolved in compliance with Polish law by the
    Economic Court in Gdansk, Poland.

agreements ended by mutual agreement on December 31, 2000, thereby terminating Polmos's authority to produce Gessler's krupnik recipe.

Thereafter, in 2003, Defendant-Appellee Sobieski Destylarnia S.A. ("Sobieski"), a Polish corporation, acquired rights in Polmos. At this time, according to Gessler, Sobieski gained unauthorized access to Gessler's secret recipe for krupnik. In January 2006, Gessler discovered advertisements on the internet website of Sobieski allegedly "trading upon the goodwill, trade name, trademark, and historic reputation" of Gessler and referencing Gessler's "historic Baczewski Distillery." The advertisements allegedly claimed that Sobieski was manufacturing krupnik in accordance with Gessler's secret recipe. Gessler then discovered that Sobieski was importing its krupnik into the United States through its agent, Defendant-Appellee Adamba Imports International, Inc. ("Adamba"), which has offices located in Brooklyn, New York. Gessler alleges that there were at least four shipments of Sobieski's krupnik into the United States, two of which were shipped to an office building in New York.

Gessler brought suit against Sobieski and Adamba[4] in the

Article 25 Provisions of the Civil Code and the applicable Act on trademarks shall apply to any issues not governed herein.

[4]Gessler's suit also included claims against Defendants-Appellees Internet Wines & Spirits, Inc., an Illinois corporation that sells alcoholic beverages in the U.S. and maintains the website www.internetwines.com, and against John Does 1-20, whom

4

United States District Court for the Southern District of New York, alleging claims of unfair competition, trademark dilution, trademark infringement, deceptive trade practices, and unjust enrichment. Sobieski moved to dismiss the claims based on improper venue, lack of personal jurisdiction, and insufficiency of service of process. The district court granted Sobieski's motion to dismiss for improper venue based on the forum selection clauses without reaching the other two issues and dismissed the complaint in its entirety against all defendants.

                              DISCUSSION

Gessler argues that the district court erred in dismissing its claims against Sobieski and the other defendants based on the forum selection clauses. In particular, Gessler claims that there is no evidence in the record to support the conclusion that Sobieski, a non-party to the licensing agreements, is entitled to enforce the forum selection provisions against Gessler. Gessler also argues that Sobieski failed to establish why Gessler GmbH, also a non-party to the agreement, should be subject to the clauses. Further, Gessler claims that the forum selection clauses do not apply to the subject matter of this suit because the claims against Sobieski do not arise out of the licensing agreements and because the agreements terminated before the events that give rise to this suit took place. Finally, Gessler

Gessler asserts are "individuals and entities who are conscious, dominant, active, forces behind the wrongful acts of Defendants."

5

asserts that even if dismissal of its claims against Sobieski was proper, the court erred in dismissing its claims against the other defendants.

"Where the district court has relied on pleadings and affidavits to grant a Rule 12(b)(3) motion to dismiss on the basis of a forum selection clause, our review is de novo." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). In general, to obtain dismissal based on a forum selection clause the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause. *Id.* at 383-84. After the party seeking enforcement has established these three conditions, the burden shifts to the party resisting enforcement to rebut the presumption of enforceability by "making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Sobieski runs into trouble with the third element. Because we conclude that Sobieski failed to demonstrate below that Gessler's claims are subject to the forum selection clauses at issue, we need not address the other *Phillips* elements.

Here, Sobieski moved to dismiss for improper venue pursuant

6

to Federal Rule of Civil Procedure 12(b)(3), arguing that Gessler was bound by the forum selection clauses contained in the 1991 and 1996 licensing agreements between Gessler USA and Polmos. Even if we were to assume that Sobieski is the successor in interest to Polmos and thereby entitled to enforce the agreements against Gessler, we conclude that the subject matter of Gessler's claims is not covered by the forum selection clauses contained in those agreements.

The forum selection clauses relied on by Sobieski specify venue in Poland for all claims "resulting from" the licensing agreements.[5] Gessler argues that its claims do not result from the licensing agreements because its claims "are limited causes of action sounding in infringement and dilution of a United States trademark, application of United States trademark laws, unfair competition under the laws of the United States and New York State, deceptive trade practices under New York State law, and the related claim of unjust enrichment from the defendant's unauthorized use and exploitation of the plaintiff's trade name, trademark, and proprietary recipes." In sum, Gessler argues that its claims do not sound in breach of contract or otherwise

---

[5]Both parties agree that the proper translation of the relevant language in the 1996 agreement is "resulting from." Sobieski, however, claims that the 1991 agreement instead employs language applying to all claims "concerning" the licensing agreement. At this stage in the litigation we must view the facts in the light most favorable to Gessler. *Phillips*, 494 F.3d 384. Accordingly, we consider the "resulting from" language to be the prevailing interpretation.

7

"result" from the licensing agreements.

This Court recently explained that "[h]owever important a forum selection clause is to the efficient functioning of international business, it is a creature of contract." *Phillips*, 494 F.3d at 387 (internal citation omitted). As such, a plaintiff's choice of forum "will not be disregarded unless the contract evinces agreement by the parties that his claims cannot be heard there." *Id.* The court must "examine the substance of [a plaintiff's] claims as they relate to the precise language" of the specific clause at issue. *Id.* at 389.

In *Phillips*, the district court had dismissed the plaintiff's copyright claims based on a determination that "any dispute concerning the defendant's rights to exploit [plaintiff's] music was primarily contractual because the defendants had acquired possession of the music legitimately under the contract." *Id.* at 383. After interpreting language in a forum selection clause stating that it governed "any legal proceedings that may arise out of" the agreement, this Court rejected the district court's analysis. *Id.* at 382. The *Phillips* Court explained that it did "not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' 'be associated with,'or 'arise in connection with' the contract." *Id.* at 389 (citing Webster's Third New International Dictionary 117 (1981)). Rather, it saw "no reason

8

to presume the parties meant anything other than the dictionary definition of the term: to originate from a specified source." *Id.* at 390.

Drawing on this definition, the *Phillips* Court went on to conclude that plaintiff's rights did not "originate" from the recording contract: "[Plaintiff] does not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work . . . . [His] copyright claims do not arise out of the contract because [he] has asserted no rights or duties under that contract . . . ." *Id.* at 390-91. Further, because the contract was "only relevant as a defense," the court could not say that plaintiff's copyright claims "originate from, and therefore 'arise out of' the contract." *Id.* at 391.

We find *Phillips* to be controlling here. Although the forum selection clauses advanced by Sobieski employ the language "resulting from" as opposed to "arising out of," the two phrases have very similar meanings. In fact, Webster's Third New International Dictionary uses the term "arise" when defining "result."[6] Here, as in *Phillips*, Gessler's claims do not sound in contract and are not based on rights originating from the licensing agreements. In fact, Gessler's claims "may begin in

---

[6]The term "result" is defined as "to proceed, spring, or arise as a consequence, effect, or conclusion." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1937 (1981).

9

court without any reference to the contract." *Id.* at 392. Accordingly, Gessler's claims are not subject to the forum selection clauses. The district court erred in dismissing the claims against Sobieski and the other defendants based on the forum selection clauses.

We decline Sobieski's invitation to affirm the district court's dismissal on the alternative grounds of lack of personal jurisdiction or failure to effect service of process. We conclude that, given the limited record available at this stage of the proceedings, those are issues best addressed by the district court on remand. *See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37-38 (2d Cir. 2001) (where record on appeal is limited, personal jurisdiction best determined by the district court on remand).

CONCLUSION

For the reasons stated above, the order of the district court is reversed and this matter is remanded for further proceedings consistent with this opinion.