Neel, Stephen E., J.
Plaintiff John F. Welch, Jr. (Welch) sues under the Uniform Securities Act, G.L.c. 110A, §410 (act), and c. 93A, alleging that defendants misrepresented material facts when soliciting him to invest in defendant MLT Capital, L.P. (MLT), a hedge fund operated by defendant Daniel J. Barach (Barach). Defendants move to dismiss, arguing that the parties’ agreement contains a forum selection clause requiring *496 this action to be brought in New York, and that the complaint fails to state a claim under either the act or c. 93A. For the following reasons, the motion will be denied.
I. The Forum Selection Clause
In 2003, Barach solicited Welch to invest in MLT, and in connection with that solicitation provided to Welch the MLT 1997 Private Placement Memorandum (PPM), which contains the representation which gives rise to the complaint: “There have been no administrative, civil, or criminal actions, whether pending, on appeal, or concluded, against the General Partner [defendant MTL Management LLC] or Barach.” Welch contends that when Barach presented the PPM to him in 2003 and 2004, and orally solicited his investment in MLT, without disclosing that a suit had been brought against Barach in 1999,[2] Barach failed to disclose material information.
The Subscription Agreements which Welch signed in 2003 and 2004, pursuant to which he made investments in MLT totaling $7,000,000, contain the following clause:
3.09 Applicable Law. This Agreement shall be construed in accordance with and governed by the laws of the State of New York and any action or proceeding hereunder must be commenced and prosecuted in the Supreme Court of the State of New York, New York County.
Defendants contend that the complaint “is wrought with allegations concerning Defendants [sic] representations under the PPM, which expressly incorporates the Partnership Agreement.” Defendants’ Supporting Memorandum, at 10. In support of that contention, they quote the PPM, at (iii)-(iv).[3] Id., n. 8. That language in the PPM is not language of incorporation; moreover, defendants cite no language from the Subscription Agreement or the Partnership Agreement, where one would expect the parties to specify that the PPM was incorporated were that the case. To the contrary, the Subscription Agreement’s integration clause, §3.11, states that “[t]his Agreement, together with the Partnership Agreement, constitutes the entire agreement among the parties pertaining to the subject matter hereof . . .” The PPM, receipt of which Welch acknowledged in §1.02 of the Subscription Agreement, is not referenced in §3.11. Similarly, the Partnership Agreement refers to the PPM, at Section 11.02.01 (as a disclosure document), but does not reference the PPM in Section 14.08, “Integration” (“[t]his Agreement constitutes the entire agreement among the parties . . . ”).
Accordingly, the Court concludes that §3.09 of the Subscription Agreement, and its counterpart, §14.06 of the Partnership Agreement, govern the forum in which “any action . . . hereunder must be commenced . . .” The Court notes also that neither §3.09 nor §14.06 contain language, often found in contracts, encompassing disputes “in connection with” or “relating to” the Subscription or Partnership Agreements, respectively.
The Supreme Judicial Court, in Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, at 578-79 (1995), construed a similarly circumscribed forum selection clause, which in that case specified California as the chosen forum:
The forum selection clause by its terms relates only to actions to enforce the agreement and not to actions based on unlawful conduct that induced a franchisee to sign the agreement. An action to enforce an agreement no doubt includes not only an action for specific performance but also an action for damages for breach of contract. An action for precontract misrepresentations and for fraud in the inducement, however, does not easily sound like an action to enforce an agreement.. . We, therefore, conclude that the forum selection clause does not apply to wrongs that Mailboxes allegedly committed before the parties entered into a contractual relationship, including allegations of precontract violations of G.L.c. 93A.
Because Welch’s claims are based substantially on defendants’ alleged pre-contract misrepresentations, and are brought not for breach of contract, but rather for violation of G.L.c. 110A, §410, and c. 93A, the Court concludes that the forum selection clause does not require those claims to be brought in New York. See also, Hodom v. Stearns, 32 A.D.2d 234, 236-37 (N.Y.App.Div. 1969); Phillips v. Audio Active Limited, 494 F.3d 378, 389-90 (2nd Cir. 2007); Light v. Taylor, 2007 WL 274798 (S.D.N.Y. 2007).
II. Whether the Complaint States a Claim Under the Act
Defendants contend that “the alleged misrepresentation in the 1997 PPM is not actionable” because Welch has failed adequately to allege that it contained any false statement, Defendants’ Reply Memorandum at 5, and because the alleged misrepresentation is in any event immaterial. Id. at 7.
There is no allegation that the statement in the PPM (“[t]here have been no administrative, civil or criminal actions, whether pending, on appeal, or concluded, against . . . Barach,” PPM at 6), was untrue when made in 1997. The dispute is whether that statement gives rise to a claim under G.L.c. 110A, §410, where Welch alleges that, in 2003 and 2004, when he purchased the MLT securities, defendants did not disclose the 1999 lawsuit.
In Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43 (2004), the Supreme Judicial Court “discuss[es] in some detail the background and purpose of’ the act, and in particular the provision under which Welch seeks relief, G.L.c. 110A, §410(a)(2), which “imposes ‘civil liability for sales [of securities] by means of fraud or misrepresentation.’ ” (Citation omitted.) Id. at 50. *497 The court also sets out the elements which a plaintiff must establish to recover:
It is enough for the plaintiff to establish that (1) the defendant “offers or sells a security”; (2) in Massachusetts; (3) by making “any untrue statement of a material fact” or by omitting to state a material fact; (4) the plaintiff did not know of the untruth or omission; and (5) the defendant knew, or “in the exercise of reasonable care [would] have known,” of the untruth or omission.
Id. at 52.[4]
The crux of Welch’s claim under the act is that when Barach offered to sell him limited partnership interests in MLT in 2003 and 2004, Barach and MLT failed to “disclose to Welch the falsity of the material misrepresentations contained in the (1997) PPM.” Essentially, Welch contends that defendants failed to disclose the changed circumstance — the 1999 lawsuit — which, in his view, rendered untrue the PPM’s representation that no civil actions had been brought against Barach.
Defendants seek to rebut that contention by citing the following language at p. (iv) of the PPM:
THE INFORMATION CONTAINED HEREIN IS GIVEN AS OF THE DATE HEREOF [November 24, 1997] AND THIS MEMORANDUM DOES NOT PURPORT TO GIVE INFORMATION AS OF ANY OTHER DATE. NEITHER THE DELIVERY OF THIS MEMORANDUM NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE MATTERS DISCUSSED HEREIN SINCE THE DATE HEREOF.
Defendants’ argument is essentially that the quoted language inoculates them from any claim that, at any date after November 24, 1997 on which they used the PPM to sell interests in MLT, they had no obligation to correct material statements in the PPM that, as of that later date, were no longer true. That is not the import of the disclaimer just quoted. The disclaimer addresses only the effect of “the delivery of this memorandum [and] and sales made hereunder ...” It does not address whether, in the circumstances alleged here, defendants had a duty under the act to inform Welch that information that was true in 1997 — i.e., that there had been “no administrative, civil or criminal actions, whether pending, on appeal, or concluded, against . . . Barach,” PPM at 6 — remained true in 2003 and 2004.
In light of the allegations in the complaint, including that Barach was the sole person upon whom MLT’s investment decisions rested, and that information concerning Barach’s character and judgment was therefore material, the Court concludes that the PPM’s disclaimer does not disable Welch from plausibly alleging that defendants had a duty in 2003 and 2004 to disclose material information regarding civil claims against Barach. As the court states in Marram, 442 Mass, at 51-52, the Federal Securities Act of 1933, 15 U.S.C. §§77a et seq.,[5] “seeks not only to secure accuracy in the information that is volunteered to investors, but also, and perhaps more especially to compel disclosure of significant matters that were heretofore rarely, if ever, disclosed.” (Citation omitted.)
Defendants argue that, in any event, the “Landlord Skirmish,” as they refer to the 1999 lawsuit, was a minor event of no import in the present case. Accordingly, they argue, Barach did not omit any material fact when he solicited Welch in 2003 and 2004 without disclosing that lawsuit.
Materialiiy is an element of a claim under the act:
The test whether a statement or omission is material is objective: “there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the ‘total mix’ of information made available.” . . . The determination of materiality is a mixed question of law and fact ordinarily decided by the trier of fact. “Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the . . . court to rule that the allegations are inactionable as a matter of law.
Marram, 442 Mass, at 57-58 (citations omitted).
The complaint alleges that, when Welch met with Barach in 2003 at the latter’s request, Barach “reaffirmed the highly material representations contained in the PPM,” which included
that (1) Barach was solely responsible for the management, operation and decision-making of MLT; that (2) as such, the key reason to purchase interests in MLT was that Barach would be completely “hands-on” in its management, direction and decision-making and that he would be the only person involved in that management, direction and decision-making, and that, therefore, (3) the excellent maturity, judgment, personal and investing temperament and impeccable integrity that Barach had to offer made MLT a superb investment opportunity for Welch.
Complaint, para. 12 (emphasis added). Welch argues that, had defendants disclosed the 1999 lawsuit, he could have seen from the court record (1) that the complaint against Barach and his wife alleged that they had breached their lease agreement and that he had threatened that if the plaintiffs sought to enforce their rights under the agreement, he would damage plaintiffs and their properly; (2) that Barach had repeatedly said that he is a “very vindictive man” and that he would cause injury to the plaintiffs if they insisted on gaining repossession of their premises pursuant to the terms of the lease; (3) that Barach had stated that he would “damage the house in ways that *498 are not immediately obvious,” and would “make it so that you can’t rent the house”; and (4) that the court had issued a temporary restraining order against Barach. Complaint, paras. 15-18.
While the fact and allegations of the 1999 lawsuit may be less material than the misrepresentations at issue in Marram, the Court does not conclude that, in light of the allegations’ of the complaint, they are “so obviously unimportant to an investor that reasonable minds cannot differ on the question of [their] materiality,” Marram, 442 Mass, at 57-58.
III. Whether the Complaint States a Claim Under c. 93A
Welch alleges, in paragraph 25 of the complaint, that in 2005 Barach sent him “MLT Capital L.P.’s revised Confidential PPM effective December 2005." That revised PPM contained the same representation as the original PPM, i.e., that “there have been no administrative, civil or criminal actions, whether pending, on appeal, or concluded, against . . . Barach.” While that statement was apparently true in 1997, it was demonstrably not true in 2005. Moreover, Barach failed to correct it when he urged Welch, in 2007 and 2008, to hold his investments in MLT.
The Court concludes that, in that respect and others described above and in the complaint, Welch has stated a claim for unfair or deceptive conduct by defendants under c. 93A.
ORDER
For the reasons stated above, the motion to dismiss is DENIED.

 Barach contends that Yasgur v. Barach, Civil Action Index No. 9639/99 (1999 lawsuit), brought by Barach’s landlord on June 21, 1999, was “ ‘discontinued’ by stipulation” a few weeks after it was commenced. Welch’s complaint alleges that the verified complaint in that case, together with an affidavit, alleged that “Barach and his wife had breached their lease agreement with the plaintiffs and that he had threatened that if the plaintiffs sought to enforce their rights under the agreements, he would damage plaintiffs and their property.” Complaint, para. 15. Welch also alleges that on June 22, 1999, the New York Supreme Court issued a Temporary Restraining Order against Barach and his wife, id., para. 18, and that at a subsequent show cause hearing Barach “paid the plaintiffs sums of money to obtain dismissal of the lawsuit against him and his wife, and the case was thereafter concluded." Id., para. 19.

 ‘This memorandum contains summaries, believed by the General Partner to be accurate, of certain terms of certain documents, but reference is hereby made to the actual documents ... for complete information concerning the rights and obligations of the parlies thereto, and all such summaries are qualified in their entirety by this reference."

 While defendants’ alleged post-sale misrepresentations may be actionable under c. 93A, see below, they cannot support a claim under the act because defendants did not sell securities to Welch in 2003 and 2004 “by making” such statements in the 2005 revised PPM, or later.

 In coordination with which, the court notes, “[t]he Legislature has directed that we interpret the [Massachusetts] act . . .” Marram, 442 Mass. at 50.