JOHNSON, MacDONALD & ASSOCIATES, et al., Plaintiffs,

v.

WEBSTER PLASTICS, Defendant.

No. C–3–93–114, C–3–93–357.

United States District Court, S.D. Ohio, Western Division.

June 27, 1994.

Armistead W. Gilliam, Faruki, Gilliam & Ireland, Dayton, OH, for plaintiffs.

Thomas P. Whelley, II, Chernesky, Heyman & Kress, Dayton, OH, for defendant.

**DECISION AND ORDER GRANTING WEBSTER PLASTICS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

MERZ, United States Magistrate Judge.

This case is before the Court on Defendant Webster Plastics' Motion for Partial Sum-

mary Judgment (Doc. # 32). The Motion has been fully briefed and was orally argued on June 23, 1994.

The parties have unanimously consented to plenary magistrate judge authority under 28 U.S.C. § 636(c) and the case has been referred to the United States Magistrate Judge at Dayton on that basis (Doc. # 49).

The Motion seeks judgment as a matter of law that Ohio Revised Code § 1335.11 is void because it violates the Commerce Clause of the United States Constitution.

Because the Motion draws in question the constitutionality of a state statute which affects the public interest, the State of Ohio has the right to intervene in defense of the statute. Pursuant to 28 U.S.C. § 2403(b), this Court certified to Lee C. Fisher, Attorney General of Ohio, the fact that the Motion was pending and invited Ohio's intervention by motion on or before June 6, 1994 (Doc. # 50). The Attorney General has not sought to intervene and has notified the Court informally that Ohio will not seek to do so.

The relevant statute was adopted in 1988 and reads as follows:

### § 1335.11 Payment of commissions due sales representatives.

(A) As used in this section:

(1) "Commission" means compensation accruing to a person for payment by another person, the rate of which is expressed as a percentage of the dollar amount of orders, sales, or profits.

(2) "Principal" means any person who does not have a permanent or fixed place of business in this state and who does all of the following:

(a) Engages in the business of manufacturing, producing, importing, or distributing one or more products for sale to customers who purchase products for resale;

(b) Utilizes one or more sales representatives to solicit wholesale orders for those products;

(c) Compensates the sales representative in whole or in part by commission.

(3) "Sales representative" means a person who contracts with a principal to solicit wholesale orders for a product within this state and who is compensated, in whole or in part, by commission, but does not include a person who places orders for or purchases the product for his own account for resale, a person who is an employee of a principal, or a person who sells the product to the ultimate consumer.

(B) For purposes of this section, the time at which a commission is due to a sales representative shall be determined in the following manner:

(1) If the contract between the principal and the sales representative is in writing and its terms unambiguously and clearly specify when the commission is due, the terms of the contract shall control the determination;

(2) If the contract between the principal and the sales representative is not in writing, or if the contract between them is in writing but its terms do not specify when the commission is due or its terms are ambiguous or unclear, the past practice used by the principal and the sales representative shall control the determination;

(3) If neither division (B)(1) nor (2) of this section can be used to clearly ascertain when a commission is due, the custom and usage prevalent in this state for the principal's and sales representative's industry shall control the determination.

(C) If a contract between a principal and a sales representative for the solicitation of wholesale orders is terminated, the principal shall pay the sales representative all commissions due him at the time of the termination within thirteen days of the termination, and shall pay the sales representative all commissions that become due after the termination within thirteen days of the date on which the commissions become due.

(D) A principal who fails to comply with division (C) of this section or with any contractual provision concerning timely payment of commissions due upon termination of a contract with a sales representative, is liable in a civil action for exemplary damages in an amount not to exceed three times the amount of commissions

owed to the sales representative. The prevailing party in an action brought under this section is entitled to reasonable attorney's fees and court costs.

(E) Division (A)(1) of section 2307.382 of the Revised Code applies to a principal who is not a resident of this state and who enters into an agreement with a sales representative for the solicitation of orders in this state, to authorize the exercise by a court of personal jurisdiction over the principal.

(F) Any provision in any contract between a sales representative and principal purporting to waive any of the provisions of this section is void.

(G) Nothing in this section invalidates or restricts any other or additional right or remedy available to a sales representative, or precludes a sales representative from seeking to recover in one action on all claims against a principal.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled· to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of ·every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510.

Defendant Webster Plastics contends Ohio Revised Code § 1335.11 is unconstitutional under the Commerce Clause of the United States Constitution. That Clause appears in Article I, § 8 of the Constitution and provides "The Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; ..." While on its face, it grants authority to Congress to act, it has long been interpreted by the courts to limit "the power of the States to erect barriers against interstate trade." *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35, 100

S.Ct. 2009, 2015, 64 L.Ed.2d 702, 711 (1980), citing, *inter alia, Cooley v. Board of Port Wardens,* 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1852). Even in the absence of Congressional exercise of the commerce power, the Commerce Clause in its so-called "dormant" state acts as "a self-executing limitation on the power of the States to enact laws imposing substantial burdens on [interstate] commerce," *Dennis v. Higgins,* 498 U.S. 439, 447, 111 S.Ct. 865, 870, 112 L.Ed.2d 969, 978 (1991) (quoting *South–Central Timber Dev., Inc., v. Wunnicke,* 467 U.S. 82, 87, 104 S.Ct. 2237, 2240, 81 L.Ed.2d 71 (1984)), or to adopt "regulatory measures designed to benefit instate economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302, 308 (1988).

■ The Supreme Court has adopted two tiers of scrutiny for state statutes alleged to violate the Commerce Clause.

When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state economic interests, we have generally struck down the statute without further inquiry. *See e.g. Philadelphia v. New Jersey,* 437 U.S. 617, 57 L.Ed.2d 475, 98 S.Ct. 2531 (1978). When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 25 L.Ed.2d 174, 90 S.Ct. 844, [847] (1970).

*Brown–Forman Distillers v. N.Y. State Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552, 559–60 (1986). A state statute subject to strict scrutiny will survive only if it serves a legitimate local purpose and the purpose could not be served as well by available nondiscriminatory means. *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986); *Hughes v. Oklahoma,* 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979). When the statute discriminates on its face, the burden of proof of its validity shifts to the State or the party in the State's place defending the statute. *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110, 121; *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250, 262.

■ Webster Plastics asserts O.R.C. § 1335.11 is subject to strict scrutiny, but Johnson, MacDonald asserts it is not. Johnson, MacDonald's analysis, made at oral argument, is that the statute does not discriminate against non-Ohio manufacturers in that it defines as "principals" only those non-Ohio manufacturers who do not have a permanent or fixed place of business in Ohio. Thus those non-Ohio manufacturers (i.e., those incorporated in another State or having a principal place of business in another State) who also do intrastate business (i.e., business from their permanent or fixed place of business in Ohio) are not covered by the statute.

The Court in unpersuaded by this analysis. The statute still discriminates on its face against a class of non-Ohio manufacturers, to wit, those without a permanent or fixed place of business in Ohio. Johnson MacDonald points to nothing in the governing Supreme Court jurisprudence which suggests that the facial discrimination, to be subject to strict scrutiny, needs to encompass all persons who do a particular type of interstate business.[1]

The Court concludes that Ohio Revised Code § 1335.11 is subject to strict scrutiny. It appears on its face [2] to serve a legitimate local purpose, to wit, assuring that sales representatives who sell in Ohio are promptly paid the commissions due them. But there is

---

1. Webster Plastics correctly notes that a sales representative does not have to be domiciled in Ohio to be protected by the statute, but merely must make sales in Ohio. Quaere, though, whether an Indiana court dealing with the relationship between an Indiana sales representative and, say, a Michigan manufacturer would be willing to apply the Ohio statute to sales made in Ohio. In practical terms, the effect of the statute will be limited to Ohio sales representatives (or those living near Ohio's borders) suing in Ohio courts.

2. The Court must make this finding based solely on the words of the statute since Ohio has no official legislative history and the parties have offered no informal history of this statute.

no proof before the Court or even suggested by Johnson, MacDonald[3] that the same purpose could not be served as well by a nondiscriminatory measure. For example, Ohio could have made all principals subject to the statute. This would certainly have served the same purpose—assuring payment of commissions to sales representatives—even better than the statute actually adopted.

The Court accordingly concludes that Ohio Revised Code § 1335.11 is unconstitutional and Johnson, MacDonald's claims based on it must be dismissed with prejudice.

This conclusion is supported by the parallel result reached in *Rosenfeld v. Lu,* 766 F.Supp. 1131 (S.D.Fla.1991). The statute in suit there, also apparently adopted to protect sales representatives, defined "principal" in the same way as the Ohio statute and provided for double damages unless the representation agreement was in writing or the commissions due on termination were paid within thirty days after termination. Judge Ryskamp found the Florida statute unconstitutional under both the strict scrutiny test and the more lenient balancing approach of *Pike v. Bruce Church, Inc., supra.*

The result is also parallel to that reached by Judge Fitzwater in *John Havlir & Associates, Inc., v. Tacoa, Inc.,* 810 F.Supp. 752 (N.D.Tex.1993). The Texas statute in question defined "principal" in the same way as O.R.C. § 1335.11 and provided treble damages and attorney fees, required written representation agreements, and provided strict time limits on payment of commissions. The Texas statute was also found unconstitutional upon application of the strict scrutiny test. To the same effect is *Moore v. Samuel Miller & Co.,* 1987 U.S.Dist LEXIS 9144 (N.D.Ala.1987), declaring unconstitutional on both Commerce Clause and equal protection grounds an analogous Alabama statute.

Johnson, MacDonald attempts to distinguish decisions on other statutes on the grounds they all require written representation agreements and Ohio's does not; indeed, in *Rosenfeld,* it was the writing requirement which was found to be the burden on interstate commerce because foreign manufacturers would have to hire lawyers to draft the contracts. With due respect to Judge Ryskamp, this Court does not find the writing requirement to be a substantial burden; most manufacturers presumably have legal representation on a regular basis anyway. The more substantial burden is the differential liability imposed on manufacturers who are covered and those who are not. Under the Ohio statute, a manufacturer with a fixed place of business in Ohio can terminate a distributor and wait to be sued to pay; once sued he is liable only for actual damages, since Ohio does not allow exemplary damages for breach of contract. *Ketcham v. Miller,* 104 Ohio St. 372, 136 N.E. 145 (1922); *Battista v. Lebanon Trotting Assn.,* 538 F.2d 111 (6th Cir.1976). See also *Motorists Mutual Ins. Co. v. Said,* 63 Ohio St.3d 690, 590 N.E.2d 1228 (1992). The covered manufacturer, on the other hand, must pay in thirteen days (unless a different period is unambiguously provided by written contract), is potentially liable for treble damages, and will be required to pay attorney fees if he loses. In other words, the risks of liability imposed on the covered manufacturer are much greater and that is what discriminates against interstate commerce in the Ohio statute.

The only authority known to the Court for upholding a statute of this type[4] is *Fiorenzo Sales, Inc. v. B. Boston and Associates, Inc.,* 1993 WL 451374, 1993 U.S.Dist. LEXIS 15372 (N.D.Ill.1993), relied upon heavily by Johnson, MacDonald. However, the Illinois

**3.** Johnson, MacDonald's counsel suggested at oral argument that the burden of proving an absence of factual issues was on Webster Plastics, a burden it had failed to carry because it offered no factual proof with its motion. This slightly misstates the burden of proof on a summary judgment motion. A moving party can prevail under the *Celotex* regime if it can show the non-moving party will be unable to prove a fact essential to its claim and it can essentially put the non-moving party to the test after discovery is complete by challenging the non-movant to show it will be able to establish a prima facie case on the challenged element. Under the strict scrutiny test, it is the defender of the statute which must come forward with proof there is no non-discriminatory alternative.

**4.** Judge Ryskamp's research revealed parallel statutes in eleven States. *Rosenfeld,* 766 F.Supp. at 1141, n. 7.

legislature in the statute upheld there did not discriminate in favor of in-state manufacturers, but imposed the protections for sales representatives on all manufacturers. That is the very difference which makes the Ohio statute discriminatory on its face. Were the Ohio statute to apply to all sales representative contracts, at the very least it would be judged under the *Pike v. Bruce Church, Inc.*, balancing approach.

In accordance with the foregoing analysis, Webster Plastics' Motion for Partial Summary Judgment is GRANTED and Count 2 of the Complaint is DISMISSED WITH PREJUDICE.