[Cite as *Enquip Technologies Group v. Tycon Technoglass*, 2012-Ohio-6181.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE   COUNTY

| | | |
|---|---|---|
| ENQUIP TECHNOLOGIES GROUP INCORPORATED, et al. | : | Appellate Case No. 2011-CA-39 |
| | : | |
| Plaintiff-Appellant/Cross-Appellee | : | Trial Court Case No. 08-CV-1276 |
| | : | |
| v. | : | |
| | : | (Civil Appeal from |
| TYCON TECHNOGLASS S.r.I, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee/Cross-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of December, 2012.

. . . . . . . . . .

JOHN  B.  PINNEY,  Atty.  Reg.  #0018173,  KARA  A.  CZANIK,  Atty.  Reg.  #0075165,  and KATHERINE M. LASHER, Atty. Reg. #0070702, Graydon Head & Ritchey LLP, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202-3157
        Attorneys for Appellant/Cross-Appellee Plaintiffs

MATTHEW E. LIEBSON, Atty. Reg. #0071544, Thompson Hine LLP, 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114-1291
and
CHRISTINE  M.  HAAKER,  Atty.  Reg.  #0063225,  and  TERRY  W.  POSEY,  JR.,  Atty.  Reg. #0078292, Thompson Hine LLP, Austin Landing I, 10050 Innovation Drive, Suite 400, Dayton, Ohio 45342-4934
        Attorneys for Appellee/Cross-Appellant Defendants

. . . . . . . . . . . .

HALL, J.

{¶ 1}    This case concerns an international commercial contract between an Italian manufacturer and its Florida sales representative. The contract contains a choice-of-law provision and a forum-selection clause. The choice-of-law provision provides that the contract is to be governed by and interpreted in accordance with Italian law; the forum-selection clause provides that the Court of Venice is competent to settle any disputes.

{¶ 2}    There are two central issues that we must decide. One is whether the forum-selection clause is permissive or exclusive. The other issue is whether Ohio law applies to determine the plaintiff's right to recover statutory exemplary damages. On the first issue, we conclude, based on Ohio contract law and Italian jurisdictional law, that the forum-selection clause is exclusive.  And on the second issue, we conclude, under Ohio's choice-of-law rules, that Ohio law does not apply to the exemplary-damages issue because Ohio does not have the "most significant relationship" to the occurrences or parties in this case. So the plaintiff may not bring a claim for exemplary damages under R.C. 1335.11.

{¶ 3}    All of the claims in this case must be dismissed. The trial court's three orders to the contrary are reversed.

## I. Background

{¶ 4}    This case has been before this Court twice before.[1] The history of this case was set out in our first opinion. Here we give only some highlights and the facts that are material to

[1]The issues in the first appeal concerned the joinder of parties, personal jurisdiction over a counterclaim defendant, and discovery. *See EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.r.l.*, 2d Dist. Greene Nos. 2009 CA 42, 2009 CA 47, 2010-Ohio-28. And the issues in the second appeal concerned personal jurisdiction over other counterclaim defendants. *See EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.r.l.*, 2d Dist. Greene No. 2010 CA 23, 2010-Ohio-6100.

the issues in the present appeal.

{¶ 5} Plaintiff, EnQuip Technologies Group, Inc., is a Florida corporation and Florida is where it is based. EnQuip was a commissioned sales representative for Defendant Tycon Technoglass S.r.l. (TyTg), an Italian manufacturer of glass-lined vessels, reactor systems, and related products used in the chemical and pharmaceutical industries. EnQuip sold TyTg's products in all 50 states, Canada, Mexico, and the Bahamas.

{¶ 6} EnQuip and TyTg's relationship was governed by a written contract, the Agency Agreement. The agreement provides that TyTg will pay EnQuip a fixed commission for each equipment sale. It further provides that EnQuip may perform post-sale service work on the equipment. The agreement contains a choice-of-law provision providing that the agreement is governed by and is to be interpreted in accordance with Italian law. And the agreement contains a forum-selection clause providing that the Court of Venice, Italy, is competent to settle any dispute between EnQuip and TyTg.

{¶ 7} EnQuip and TyTg's relationship soured, and in June 2007, TyTg unilaterally terminated the Agency Agreement. In 2008, EnQuip brought an action against TyTg.[2] Since TyTg's parent company was headquartered here,[3] the action was brought in Ohio. EnQuip asserted five claims against TyTg: Count One, breach of contract requiring indemnity under the

---

[2] EnQuip also named as defendants Robbins & Myers Italia S.r.l., Robbins & Myers, Inc., and Pfaudler Inc. Robbins & Myers Italia was an Italian company and was TyTg's direct owner. Robbins & Myers, Inc., owned Robbins & Myers Italia. Robbins & Myers, Inc., also owned Pfaudler.

Robbins & Myers Italia was dismissed as a party. And EnQuip's claims against Pfaudler were dismissed by directed verdict. EnQuip has not assigned error to either dismissal.

[3] Robbins & Myers, Inc., was TyTg's parent company. It has since moved its headquarters to Texas.

Italian Civil Code; Count Two, an accounting to recover unpaid commissions; Count Four, exemplary damages under R.C. 1335.11; Count Five, breach of contract resulting in loss of profits from service work; and Count Six, fraud.[4] Among TyTg's asserted defenses was an improper-forum defense based on the Agency Agreement's forum-selection clause. TyTg also asserted several contingent counterclaims against EnQuip.[5]

{¶ 8} Both EnQuip and TyTg moved for judgment on the pleadings based on TyTg's improper-forum defense. In a February 17, 2009 order, the trial court sustained EnQuip's motion and overruled TyTg's. The court concluded that the forum-selection clause is permissive rather than exclusive. In other words, the Court of Venice is *a* proper forum but it is not *the* proper forum, not the sole proper forum. The trial court concluded that it, too, was a proper forum.[6]

{¶ 9} The parties agreed that Italian law applied to determine their substantive rights and liabilities under the Agency Agreement. The trial court appointed an Italian-law expert to advise it. The parties submitted questions (approved by the trial court) to the expert, and the expert answered the questions in a written report.

---

[4]EnQuip withdrew Count Three.

[5]TyTg also asserted contingent counterclaims against several other parties.

[6]Later, the trial court sua sponte moved to reconsider the forum issue. Arriving at the same conclusion, the court denied its motion in a March 12, 2010 order.

{¶ 10}   The case was tried to a jury. After the parties had presented their evidence, TyTg moved for a directed verdict on all of EnQuip's claims. The trial court sustained TyTg's motion with respect to Count Four (exemplary damages under R.C. 1335.11) and Count Six (fraud),[7] dismissing both claims. The court also determined that Court Two (accounting) should not go to the jury. The jury found for EnQuip. It awarded EnQuip $207,115 in unpaid commissions; $268,423 in damages relating to breach of contract; $105,000 for an indemnity claim allowed under Italian law; and $5,000 in lost service-work profits.

{¶ 11}   On June 29, 2011, the trial court entered final judgment, which reflects the court's ruling on TyTg's directed-verdict motion and the jury's verdict. The trial court also entered an order that awarded attorney's fees and court costs, under R.C. 1335.11, to the defendants as the prevailing parties on Count Four.

{¶ 12}   EnQuip appealed, and TyTg cross appealed.[8]

## II. Analysis

---

[7] EnQuip has not assigned error to the dismissal of Count Six.

[8] Pfaudler joined TyTg's cross appeal so it is also an appellee.

{¶ 13} While EnQuip and TyTg each presents four assignments of error, we will review only EnQuip's first assignment of error and TyTg's first cross assignment of error. Our rulings on these two assignments of error render the others moot. EnQuip's first assignment of error alleges that the trial court erred by granting TyTg's motion for directed verdict, and denying its motion for judgment notwithstanding the verdict, on its claim for exemplary damages under R.C. 1335.11 (Count Four).[9] TyTg's first cross assignment of error alleges that the trial court erred by overruling its motion for judgment on the pleadings.[10] Taking the two assignments of error in logical order, we begin with TyTg's cross assignment of error.

### A. The meaning of the forum-selection clause

{¶ 14} The Agency Agreement's forum-selection clause states that "[t]he law Court of Venice will be competent for any dispute." The trial court concluded that the clause is permissive. A permissive clause means simply that the parties have waived any right to object to the exercise of personal jurisdiction by the identified court. *Valmac Indus., Inc. v. Ecotech Machinery, Inc.*, 137 Ohio App.3d 408, 413, 738 N.E.2d 873 (2d Dist.2000). It does not mean that they waived their right to commence an action in another court that has jurisdiction. *Id.* TyTg, though, contends that the forum-selection clause is exclusive. An exclusive forum-selection clause means that the identified court is the *only* court with jurisdiction–the parties *must* commence any action in the identified court. Thus the central issue in the first cross

---

[9] EnQuip's other assignments of error allege that the trial court erred by granting Robbins & Myers's motion for judgment notwithstanding the verdict on the jury's alter-ego finding, miscalculating the amount of pre-judgment interest that TyTg owes, and failing to award EnQuip costs as the prevailing party.

[10] TyTg's other cross assignments of error allege that the trial court erred by denying its motion for directed verdict and for judgment notwithstanding the verdict on Count One (breach of contract), awarding EnQuip pre-judgment interest, and granting EnQuip's motion for directed verdict on two of its (TyTg's) contingent counterclaims.

assignment of error concerns the meaning of the forum-selection clause, the meaning of language in the parties' contract.

## 1. Language in a contract bears the meaning
## intended by the parties to the contract

{¶ 15} The answer to a question about what specific contract language means lies in the contracting parties' intent–what did they intend the language to mean? It is the court's task to determine the parties' intended meaning. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 18 ("The role of courts in examining contracts is to ascertain the intent of the parties." (Citation omitted.)). The search for the parties' intended meaning begins with the contract itself. Their intent is presumed to reside in the language they used. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996); *Blair v. McDonagh*, 177 Ohio App. 3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 49 (1st Dist.) ("In the construction of a written instrument, a court's primary objective is to give effect to the parties' intent, which can be found in the language they chose to employ.").

{¶ 16} A stumbling block in the search for intended meaning is ambiguity. "Contractual language is ambiguous '* * * where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir.2008), quoting *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186 (10th Dist. 2003). But there is no ambiguity if the subject language's meaning can be determined by considering the language in the context of other contractual language. *See id*. ("In determining whether contractual language is ambiguous, the contract 'must be construed as a whole' * * *."), quoting *Tri-State Group, Inc. v. Ohio Edison*

*Co.*, 151 Ohio App.3d 1, 2002-Ohio-7297, 782 N.E.2d 1240, ¶ 38 (7th Dist.). Often, the intended meaning of a word or phrase may be clear when that word or phrase is considered in the context of other words or phrases in the contract. *See* 18 Ohio Jurisprudence 3d, Contracts, Section 123 (2012) ("A term that would otherwise cause ambiguity can be construed in the context of other terms in the contract to resolve the ambiguity."), citing *Seringetti Const. Co. v. City of Cincinnati*, 51 Ohio App. 3d 1, 553 N.E.2d 1371 (1st Dist.1988). Thus the intended meaning of any part of the parties' contract should be determined in light of the whole contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997) ("The court should read the contract as a whole and gather the intent of each part from the whole.").

### 2. Determining the intended meaning of a forum-selection clause

**{¶ 17}** Ohio's rules of contract construction raise the presumption that the parties' intended their forum-selection clause to be permissive unless there is "'some further language indicating the parties' intent to make jurisdiction exclusive.'" *EI UK Holdings, Inc. v. Cinergy UK, Inc.*, 9th Dist. Summit No. 22326, 2005-Ohio-1271, ¶ 21, quoting *John Boutari & Son Wine & Spirits, S.A. v. Attiki Importers & Dist. Inc.*, 22 F.3d 51, 52 (2d Cir.1994). There are few Ohio cases that consider what language indicates that parties intended their forum-selection clause to be exclusive, and no cases feature language like that here. So we look to federal cases.

**{¶ 18}** Federal courts also presume that a forum-selection clause is permissive absent language of exclusion. The Fourth Circuit Court of Appeals, one of the few federal courts that has directly addressed the exclusive-language exception, found that a forum-selection clause containing language like that here, when considered in the context of a choice-of-law provision,

indicated the intent to make jurisdiction exclusive. In *Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643 (4th Cir.2010), the choice-of-law and forum-selection clauses in the parties' contract stated that the contract "shall be subject to English Law and the jurisdiction of the English High Court." *Albemarle* at 646. The court construed the forum-selection clause under federal law, which like Ohio law, makes the particular language used by the parties dispositive and which like Ohio law, presumes that a forum-selection clause is permissive unless there is specific language of exclusion. The court noted that if the clause in the *Albemarle* parties' contract is considered alone, out of context, it looks permissive. But the court continued, if it is considered in context, specifically in the context of the choice-of-law provision, the forum-selection clause looks exclusive. Said the court, "the [forum-selection] clause taken in context does contain what amounts, in effect, to language of exclusion. The clause here includes language that English law, not American federal law, must be applied." (Citation omitted.) *Id.* at 651. The meaning of the forum-selection clause intended by the parties, then, was found in their choice-of-law provision. Thus their intended meaning was the clause's meaning in English law. *Accord TH Agriculture & Nutrition, L.L.C. v. Ace European Grp. Ltd.*, 416 F.Supp.2d 1054, 1076 (D.Kan.2006) (concluding that a similar choice-of-law provision provided "[b]y its plain terms" that interpretation of a forum-selection clause was governed by the law of The Netherlands).

{¶ 19} We think that the Fourth Circuit's analysis in *Albemarle* is the proper analysis also under Ohio law. A choice-of-law provision should be considered as evidence of the meaning of a forum-selection clause in the same contract.

### B. A forum-selection clause should be interpreted

**under the law chosen by the parties**

{¶ 20}  EnQuip contends that a choice-of-law provision and a forum-selection clause are separate and distinct such that the choice of law should not affect the forum selection. *See EI UK Holdings*, 2005-Ohio-1271, ¶ 23 ("[A] choice of law clause is separate and distinct from a forum selection clause and is not to be interpreted as such. * * * Therefore, such a clause should have no bearing on the determination of whether a forum selection clause is mandatory or permissive."). Traditionally, this has been true. Crystal & Giannoni-Crystal, *Enforceability of Forum Selection Clauses: A "Gallant Knight" Still Seeking Eldorado*, 8 S.C. J. Int'l. L. & Bus. 203, 223 (2012). Courts would apply the parties' choice of law to substantive issues, but they would apply their own law to procedural matters. Forum selection was seen as a procedural matter, so courts applied their own law to resolve forum-selection matters. Indeed, this is how the trial court here reasoned and how it arrived at its conclusion.

{¶ 21}  But the conventional application of the substance-procedure dichotomy to forum-selection matters is problematic. It fails to recognize that the "forum-selection matter" is composed of at least two discrete, though interrelated, issues, only one of which is procedural. One issue is how to interpret the forum-selection clause. This is a substantive issue concerned with what the clause means. The other issue is whether to enforce the clause. Only this issue is truly procedural because only when a court enforces a forum-selection clause does the forum change. A court could interpret the clause and then decide not to enforce it.

{¶ 22}  Perhaps for this reason, the Second Restatement of Conflict of Laws discards the traditional approach of deciding whether an issue is "substantive" or "procedural." Federal courts, where international disputes more often tend to arise, have noted that a forum-selection

clause raises the substantive and procedural issues identified above. They also have concluded that the parties' choice of law should be used to interpret their forum-selection clause.

### 1. The Restatement of Conflict of Laws

{¶ 23} The Second Restatement of Conflict of Laws explicitly warns about the rote use of the substance-procedure dichotomy: "These characterizations [of substance and procedure] * * * have led some courts into * * * adherence to precedents that have classified a given issue as 'procedural' or 'substantive', regardless of what purposes were involved in the earlier classifications." 1 Restatement of the Law 2d, Conflict of Laws, Section 122, Comment b (1971). Thus the Restatement discards the facile analysis that led courts to apply their own law to an issue simply because the issue was deemed procedural. 16 American Jurisprudence 2d, Conflict of Laws, Section 136, at 179 (2009), citing *id*. Instead, the Restatement "goes directly to the question whether the law of the forum should be applied with respect to each particular subject." *Id*., citing 1 Restatement, Section 122, Comment b.

### 2. Federal-court decisions

{¶ 24} Some federal courts have said that using the parties' choice of law to interpret their forum-selection clause simply makes sense. Just like their chosen law is used to interpret every other provision in their contract, it should also be used to interpret their forum-selection clause. The Seventh Circuit has stressed the simplicity of this. Writing for the court in *Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd.*, 476 F.3d 421, 423 (7th Cir.2007), Judge Posner wrote that "[s]implicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the

jurisdiction whose law governs the rest of the contract in which the clause appears * * * rather than making the court apply two different bodies of law in the same case." *Abbott* at 423, citing *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428 (10th Cir.2006). The Second Circuit, while not deciding the issue,[11] said in *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir.2007), "we cannot understand why the interpretation of a forum selection clause should be singled out for application of any law other than that chosen to govern the interpretation of the contract as a whole." *Phillips* at 386, citing *Yavuz* at 428 and *Abbott Labs.* at 423. The court noted that the analysis of a forum-selection clause involves several steps, including the substantive issue of interpretation and the procedural matter of enforceability. It concluded federal law should be used to determine a forum-selection clause's enforceability. "This is because  enforcement of forum clauses is an essentially procedural issue," said the court, "while choice of law provisions generally implicate only the substantive law of the selected jurisdiction." (Citations omitted.) *Id.* at 384. But the court said that it makes less sense to apply federal law to issues of meaning. *Id.* at 385 ("We find less to recommend the invocation of federal common law to interpret the meaning and scope of a forum clause.").

{¶ 25}  A Michigan federal district court has stressed that using the law chosen by the parties to interpret their forum-selection clause is only logical. In *Global Link, LLC. v. Karamtech Co., Ltd.*, 06-CV-14938, 2007 WL 1343684 (E.D. Mich. May 8, 2007), the parties' contract contained a choice-of-law provision in which they agreed that "[t]he formation, validity and enforcement of this contract shall be governed by Korean law." *Global Link* at *1. There was

---

[11]The *Phillips* court noted the issue sua sponte. It did not decide the issue because the parties did not dispute it and therefore had not briefed it.

also a forum-selection clause that provided, "All disputes arising from this contract between the parties shall be subject to the jurisdiction of a court in Korea which has jurisdiction over the headquarter office of Karam Tech." *Id*. The district court pointed out that "there can be no enforcement of a contract without interpreting the contract." *Id*. at \*2. "[I]t is logical," said the court, "to interpret a provision of an agreement under the law that the parties agreed would govern issues arising out of the agreement." *Id*.

{¶ 26}    A New York district court concluded that it was required to apply the law chosen in the choice-of-law provision to interpret the forum-selection clause in order to honor the parties' choice-of-law agreement. In *Simon v. Foley*, W.D.N.Y. No. 07-CV-766S, 2011 WL 4954790 (Oct. 18, 2011), the  pertinent contract provision provided, "This Agreement shall be construed and enforced in accordance with, and the rights of the parties hereto shall be governed by, the laws of the Province of Ontario. Each of the parties hereto irrevocably attorns to the jurisdiction of the courts of the Province of Ontario." *Simon* at \*4. The defendant argued that the provision was exclusive, as interpreted under federal law; the plaintiff argued that it was permissive, as interpreted under Ontario law. The district court discussed the Second Circuit's decision in *Phillips*. The court noted that, though *Phillips* did not actually decide the issue, at least one district court in the Second Circuit had decided it in the way suggested in *Phillips*. *Simon* at \*5, citing *Evergreen Nat'l Indem. Co. v. Capstone Bldg. Corp.*, 2008 WL 349457 (D.Conn. Feb. 6, 2008). The *Simon* court concluded that the parties' choice of law must be honored and therefore used to interpret their forum-selection clause.

{¶ 27}    Most recently, another Michigan district court also held that the law chosen by the parties in a choice-of-law provision should be used to interpret a forum-selection clause. In

*Lanier v. Syncreon Holdings, Ltd.*, E.D.Mich. No. 11-14780, 2012 WL 3475680 (Aug. 14, 2012), the pertinent provision provided:

> The validity and enforceability of this Plan shall be governed by and construed in accordance with the laws of Ireland and the courts or [sic] Ireland shall have jurisdiction to hear and determine any suit, action or proceedings that may arise out of or in connection with this Agreement and for such purposes irrevocably submits to the jurisdiction of such courts without regard to choice of laws or conflict of laws provisions thereof that would direct the applicable [sic] of the laws of any jurisdiction.

*Lanier* at *4. The court said that the enforcement of a forum-selection clause is not a procedural matter of jurisdiction or venue but is a substantive matter of contract. *Accord Valmac*, 137 Ohio App.3d 408, 738 N.E.2d 873. The court then distinguished enforceability from interpretation. A forum-selection clause's enforceability, said the court, must be determined under federal law, because whether to enforce such a clause is an issue of procedure. But what a forum-selection clause means is not a matter of procedure but one of contract interpretation. The district court held that "determining the meaning and scope of a forum selection clause is a separate substantive inquiry that is controlled by the law chosen in the contract itself." *Lanier* at *5.

{¶ 28} Each of these federal-court cases discussed above cites as support the same decision from the Tenth Circuit Court of Appeals, *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418. *Yavuz* gives a thorough rationale for the idea that parties' choice of law should be used to interpret their forum-selection clause. The *Yavuz* court, like other courts have, pointed out that there is no good reason why the law identified in the parties' choice-of-law provision should not interpret their

forum-selection clause. The forum-selection clause is just another clause in the parties' contract–their agreement on the proper forum for their disputes. Why then, asked the court, should this clause be treated differently than every other one? "We see no particular reason, at least in the international context," said the court, "why a forum-selection clause, among the multitude of provisions in a contract, should be singled out as a provision not to be interpreted in accordance with the law chosen by the contracting parties." *Yavuz* at 428, citing 1 Restatement of the Law 2d, Conflict of Laws, Section 204(a). Interpreting it under the parties' chosen law, the court continued, honors the parties' agreement: "[W]hen the contract contains a choice-of-law clause, a court can effectuate the parties' agreement concerning the forum only if it interprets the forum clause under the chosen law." *Id*.

{¶ 29} The court based its reasoning on U.S. Supreme Court opinions that support the Court's holding that forum-selection clauses are enforceable in the context of international disputes. The *Yavuz* court noted that these opinions "emphasize the primacy of the parties' agreement regarding the proper forum." *Id*. Acknowledging that the Supreme Court has not addressed the issue of a forum-selection clause's meaning, the *Yavuz* court took the reasoning that the Court has used to support their enforcement and applied it to their interpretation:

> If the parties to an international contract agree on a forum-selection clause that has
>
> a particular meaning under the law of a specific jurisdiction, and the parties agree
>
> that the contract is to be interpreted under the law of that jurisdiction, then respect
>
> for the parties' autonomy and the demands of predictability in international
>
> transactions require courts to give effect to the meaning of the forum-selection
>
> clause under the chosen law, at least absent special circumstances.

(Citation omitted.) *Id.* at 430.

**{¶ 30}** Thus the *Yavuz* court held that "just as the Supreme Court has made clear that under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision, * * * the courts should ordinarily honor an international commercial agreement's forum-selection provision as construed under the law specified in the agreement's choice-of-law provision." *Id.*

**{¶ 31}** We think that *Yavuz*'s reasoning is persuasive.

### C. The meaning of the forum-selection clause here

### is its meaning in Italian law

**{¶ 32}** The Agency Agreement contains EnQuip and TyTg's definition of certain aspects of their relationship. Article 1 defines EnQuip's sales territory–the United States, Canada, Mexico, and the Bahamas. Article 2 specifies the equipment that EnQuip may sell. Article 3 defines TyTg's obligations and Article 4 defines EnQuip's. Article 5 concerns who pays the expenses that EnQuip incurs while trying to sell TyTg's products. Article 6 contains their agreement about EnQuip's commissions (that one will be paid on each sale, the amount, when it becomes due, and other details). Article 7 talks about the length of their contractual relationship, how it may be terminated, and what happens when it is terminated. Article 8 specifies the law that governs and interprets the terms of the Agreement (Italian law) and the court that is competent to settle their disputes (the Court of Venice). Finally, Article 9, the last article, concerns a few miscellaneous matters.

{¶ 33} This case focuses, and hinges, on Article 8. This article is in English, like the rest of the Agency Agreement, and states: "This agreement shall be governed by and interpreted in accordance with the Italian law. The law Court of Venice will be competent for any dispute." The first sentence is a choice-of-law provision, and the second sentence is the forum-selection clause. Not only did EnQuip and TyTg agree in the choice-of-law provision that Italian law would govern the Agreement, they specifically agreed that Italian law would interpret its language. No language is excepted.

{¶ 34} The plain terms of the choice-of-law provision compel the finding that EnQuip and TyTg intended the language in Article 8, just like they intended the language in every other Article, to have the meaning given it by Italian law. In other words, the meaning of the forum-selection clause–whether it is permissive or exclusive–is its meaning in Italian law

### D. Italian law gives the forum-selection clause an exclusive meaning

{¶ 35} As a preliminary matter, we note that Ohio courts may determine the law of a foreign country, which determination is made as a matter of law. *See* Civ.R. 44.1(B). In making the determination, courts "may consider any relevant material or source, including testimony, whether or not submitted by a party." *Id*. To determine what Italian law says the forum-selection clause means, we rely on materials submitted to the trial court that have been translated into English.

{¶ 36} Italy is a signatory of the 1967 Brussels Convention. Article 17 of the convention provides that if parties agree that a particular court is "to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court * * * shall have exclusive jurisdiction." Based on this Article, Italy's highest court, the Supreme

Court of Cassation (Corte di Cassazione), has held that a forum-selection clause in which the parties agree that "the competent court for any possible dispute is the court of the initiating party" conferred exclusive jurisdiction on that court. *Chopova v. G.B. S.r.l.* (1994).[12] The Court of Genoa has said that it is not necessary for the clause to expressly refer to the identified court's exclusivity. *G. S.p.A. v. R.* (2007).[13]

{¶ 37}  Paralleling Article 17 is Article 23 of E.U. Council Regulation No. 44/2001. This regulation is binding on all European Union member states, one of which is Italy. Article 23 likewise provides that if parties agree that a particular court is "to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court * * * shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise." Italy's highest court has said that because Article 23 is "substantially analogous" to Article 17 the interpretation of Article 23 must be based on Article 17. *Saneco S.A. v. Toscoline S.r.l.* (2006).

---

[12] The Court in *Chopova* said that "a clause providing that the competent court for any possible disputes is the court of the plaintiff confers to the designated court an international value and, therefore, is the unique criterion and essential requirement for individuating the legal system to which the court must belong, with the consequence that the latter is granted the exclusive competence to settle any dispute arising from the relative agreement."

[13] In this case, the Genoan court held that the parties' intent was to submit their disputes to a Zurich judge exclusively. A provision in the parties' contract provided: "Swiss law applies. The competent court for possible disputes arising from the contract is Zurich; ordinary judges shall be competent." The court said that "it is not necessary that the exclusivity results from an express textual indication" because Article 17 does not require parties to expressly mention exclusivity.

{¶ 38}  England is also an E.U. member state. In *Albemarle*, the Fourth Circuit case we discussed above, the court said that under Article 23 of the Brussels Convention the parties' forum-selection clause in that case was exclusive. The court noted that the English High Court, which had ruled on the same contract, agreed: "'As a matter of English law, * * * that clause would be construed as being an exclusive jurisdiction clause, as was conceded by Albemarle in the 2008 Action in light of Article 23.1 of the Judgements Regulation (No. 44/2001).'" *Albemarle Corp.*, 628 F.3d at 651, quoting *AstraZeneca UK Ltd. v. Albemarle Int'l Corp.*, [2010] EWHC 1028 (Comm). Other federal courts in cases where the law of other E.U. member states governed the parties' contract have concluded the same. *E.g.*, *TH Agriculture*, 416 F.Supp.2d at 1075-1079.[14] The language in the forum-selection clause here is essentially the same as the language in the *Albemarle* parties' forum-selection clause.

{¶ 39}  The plain meaning of the forum-selection clause here in Italian law is that the Court of Venice has exclusive jurisdiction. We conclude therefore that EnQuip and TyTg intended the clause to have this exclusive and mandatory meaning.

{¶ 40}  To be clear, we have not decided the permissive-exclusive issue strictly as a choice-of-law issue. Rather, we have decided it simply as an issue of contract interpretation. We applied Ohio contract-construction law to the forum-selection clause. Ohio law says that the meaning of a forum-selection clause is the meaning intended by the parties. Based on the parties'

---

[14]The forum-selection clause in *TH Agriculture* provided that "[a]ny dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained in this Policy is hereby understood and agreed by both the Insured and the Insurers to be subject to the law of the Netherlands. Each party agrees to submit to the jurisdiction of any court of competent jurisdiction within The Netherlands * * *. All matters arising hereunder shall be determined in accordance with the law and practice of such Court." The district court determined that "the parties' contractually chosen law, which is the law of The Netherlands, governs interpretation of the forum selection clause." The court concluded that, interpreted under the law of The Netherlands, the clause was exclusive.

choice-of-law provision, which states that their agreement is to be interpreted in accordance with Italian law, we concluded that the meaning they intended is the forum-selection clause's meaning in Italian law. Consequently, we considered what meaning Italian law would give to the clause's language. We then determined that Italian law would give the forum-selection clause an exclusive meaning.

{¶ 41} Contrary to what EnQuip argues, and the trial court concluded, determining what the clause means in Italian law does not entail *applying* Italian law. We do not conclude that the Court of Venice has exclusive jurisdiction in this case, which would be the case if we had applied Italian law. We conclude that the contract requires the action to be pursued in an Italian court. It is possible that the Italian court would conclude that the Court of Venice does not have exclusive jurisdiction, based on jurisdictional rules other than those in Article 23 and Article 17. The issue here concerns only what EnQuip and TyTg intended the clause to mean. We need not, and can not, determine whether the Court of Venice actually does have exclusive jurisdiction.

**E. The R.C. 1335.11 exemplary-damages claim**

**is beyond the scope of the forum-selection clause**

{¶ 42} The second issue of meaning here is whether EnQuip's claims, specifically the asserted R.C.1335.11 exemplary damages, come within the scope of the forum-selection clause. The clause states that the Court of Venice is to settle "any dispute." So the question is, did the parties intend that the Court of Venice settle the disputes inherent in EnQuip's claims? The answer is easily determined for the contract claims. But the same cannot be said about the exemplary-damages claim.

{¶ 43} The claims in Counts One, Two, and Five are contract claims. The disputes

presented in these claims concern unpaid commissions under the terms of the agreement and consequential damages and indemnity for terminating the agreement. These disputes bear a plain connection to the Agency Agreement, so they fall squarely within the forum-selection clause's scope.

{¶ 44} The claim in Count Four is a statutory claim under R.C. 1335.11. "Section 1335.11 deals narrowly with the availability of exemplary damages for unpaid commissions in dealings between a principal and a sales representative." *Petrobas Energia S.A. v. Americas Internatl., Inc.*, Case No. 5:04 CV 2433, 2005 WL 2133607, *5 (N.D.Ohio Sept. 1, 2005). The statute's purpose is to ensure that sales representatives who sell in Ohio are promptly paid the commissions due them. *Johnson, MacDonald & Assoc. v. Webster Plastics*, 856 F.Supp. 1249, 1252 (S.D.Ohio 1994). To that end, R.C. 1335.11 allows a sales representative to obtain exemplary damages of up to "three times the amount of the commissions owed" plus attorney fees and costs. R.C. 1335.11(D).

{¶ 45} EnQuip agrees that Italian law applies to determine its right to relief under all of its claims except its claim for exemplary damages under R.C. 1335.11. Enquip contends that the choice-of-law provision does not apply with respect to this claim because R.C. 1335.11 itself renders the choice-of-law provision void. The statute provides: "Any provision in any contract between a sales representative and principal is void if it purports to do any of the following: (1) Waive any provision of this section; (2) Make the contract subject to the laws of another state; [or] (3) Limit the right of the sales representative to initiate litigation or alternative dispute resolution in [Ohio]." R.C. 1335.11(F). We agree that the choice-of-law provision does not apply with respect to EnQuip's claim for exemplary damages. But this does not mean that Ohio law

applies to determine these damages.

{¶ 46}  Initially, we note several difficulties that we have with allowing this claim. The Agency Agreement provides that its application is subject only to the laws of Italy–not any other state. Moreover, we hesitate to declare that an Ohio statute trumps a contract that was negotiated outside Ohio between an Italian manufacturer and a Florida-based sales representative and allows sales in four different countries and every U.S. state–especially when only a very small number of sales made under the contract involved Ohio and even fewer sales are likely relevant to the R.C. 1335.11 claim. This is particularly true when Ohio does not predominate in the agreement. Finally, several other states have statutes similar to R.C. 1335.11. Many of these statutes also provide that that state's law prevails, excluding any other state's law from applying.[15] The convoluted mess that could be created in trying to determine which state's law should apply in a multi-state contract must be avoided.

{¶ 47}  We conclude that, though R.C. 1335.11(F) does apply to void a choice-of-law provision and forum-selection clause, Ohio's choice-of-law rules ultimately determine the applicable law. The Ohio Supreme Court has said that if one party asserts that another jurisdiction's law should apply to resolve an issue and the incident underlying the cause of action occurred in that jurisdiction, "resort to Ohio's choice-of-law rules is necessary." *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St. 3d 474, 476, 747 N.E.2d 206 (2001). Therefore we use

---

[15] *See, e.g.,* N.C.Gen.Stat.Ann. 66-193 ("A provision in any contract between a sales representative and a principal purporting to waive any provision of this Article * * * by a contract subject to the laws of another state, is void."); Tex.Bus. & Com. Code Ann. 54.002(c) ("A provision in the contract establishing venue for an action arising under the contract in a state other than this state is void."); 820 Ill.Ann.Stat. 120/2 ("Any provision in any contract between sales representative and principal purporting to waive any of the provisions of this Act shall be void."); Ala.Code 8-24-5(a) ("This chapter may not be waived * * * by any provision in a contract attempting to make the contract or

these rules to determine which law applies in this case to the availability of exemplary damages.

### F. Ohio law does not apply to the issue of exemplary damages

{¶ 48}  Ohio's choice-of-law rules are the rules in the Second Restatement of Conflict of Laws. *Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 112 Ohio St.3d 521, 2007-Ohio-608, 861 N.E.2d 524, ¶ 7-8 (stating that the Court has "adopted the Restatement in its entirety" to govern choice-of-law analysis). The rules "'do not themselves determine the rights and liabilities of the parties, but rather guide decision as to which local law rule will be applied to determine these rights and duties.'" *Ohayan* at 476, citing 1 Restatement of the Law 2d, Conflict of Laws, Section 2, Comment a(3).

---

agreement subject to the laws of another state. A waiver of any provision of this chapter is void.").

{¶ 49}   The availability of exemplary damages is most often analyzed as a tort issue. If exemplary damages are awarded in a contract action, it is typically because the breaching party also committed an act with a tort-like degree of fault that allows such damages. Consequently, the Restatement rules used to determine which law applies to an exemplary-damages issue are rules that apply to tort issues. The tort rules use the "most significant relationship" test to determine which law applies to determine an issue about exemplary damages. 1 Restatement, Section 145(1).[16]  "To determine the state with the most significant relationship, a court must * * * consider the general principles set forth in Section 145." *Am. Interstate* at ¶ 8. These general principles provide that the applicable law is the law of the state that, with respect to the exemplary-damages issue, "has the most significant relationship to the occurrence and the parties under the principles stated in § 6," 1 Restatement, Section 145(1).  The principles in Section 6 underlie all choice-of-law rules and are used to evaluate an issue's relationship to the occurrence, the relevant states, and the parties.  1 Restatement, Section 145, Comment 6.  In applying the Section 6 principles to determine the law applicable to a tort issue, certain contacts must be considered.  1 Restatement, Section 145(2). These contacts are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id*.

---

[16]"The law selected by application of the rule of   § 145 determines the right to exemplary damages." 1 Restatement, Section 171, Comment d. *Accord* 16 American Jurisprudence 2d, Conflict of Laws, Section 133, at 176 (2009) ("Applying the conflicts of law rules of the Restatement, punitive damages are a matter of substantive law governed by the law of the state selected by application of the conflict of laws rules.").

{¶ 50} In this case, it is readily apparent that among the three possible choices–Ohio, Florida, Italy–whose law potentially applies, Ohio has the *least* significant relationship to the occurrence and parties. The jury awarded EnQuip a total of $207,115 in unpaid commissions. Of this total, the jury found that EnQuip was owed $41,361 in commissions for sales to customers that were closed during the contract term. This is the same amount that EnQuip claimed it had not been paid for commissions due from May - June 2007, when TyTg terminated the contract. One of these sales was to Ricerca Biosciences, an Ohio company. The amount of commission owed to EnQuip on this sale was $247.20. The rest of the total award is based on the jury's finding that EnQuip was owed $165,754 for sales initiated during the contract term but for which TyTg did not receive payment until after termination. EnQuip claimed that it was owed $184,089.73 in commissions for these sales.[17] Evidently the jury did not find that all of these commissions were actually owed. Important here, though, is that none of the post-termination commissions–including those counted by EnQuip but not the jury–was to an Ohio company. Thus there is only one, small disputed commission related to Ohio.

---

[17] "Known Commissions Due to EnQuip on Orders Booked But For Which Payment was Not Made by Customer Before Termination," attached to Plaintiff's Exhibit 663 (EnQuip's Third Set of Interrogatories to TyTg).

{¶ 51} That the commission from only one Ohio sale is disputed is implied by EnQuip in its memorandum opposing the defendants' motion regarding personal jurisdiction, forum non conveniens, and the R.C. 1335.11 claim. EnQuip said, "Defendants' [sic] argue that EnQuip has failed to connect its claims to Ohio * * * stat[ing] in a conclusory manner that '[n]o such sale or commission is in dispute.'"[18] In response to defendants' claim, EnQuip pointed out that in its complaint it asserted that its claims "arise in part with regard to the sale by R&M, Pfaudler and TyTg and/or R&M Italian of TyTg Products or Pfaudler products sold to EnQuip customers or potential customers, on which EnQuip was due a commission, including products sold in or from Ohio."[19] And EnQuip pointed out that TyTg sent a letter "to EnQuip's customers, including customers in Ohio informing them not to submit payments to TyTg through EnQuip."[20] But EnQuip referred to only one disputed commission that came from a sale to an Ohio customer–the $247 commission on the sale to Ricerca Biosciences.[21]

{¶ 52} Given the evidence, we conclude that Ohio does not satisfy the "most significant relationship" test. Therefore Ohio substantive law does not apply to determine EnQuip's right to recover exemplary damages.

---

[18] EnQuip Technologies Group Incorporated's Memorandum in Opposition to Defendants' Motion Regarding Personal Jurisdiction, Forum Non Conveniens, and R.C. § 1335.11, p.19.

[19] Third Amended Complaint, ¶12.

[20] *Id.*; *see* Plaintiff's Exhibit 220 (August 2, 2007 letter from TyTg).

[21] Affidavit of Robert W. Naidel, ¶4 (attached to EnQuip's opposition memorandum) ("EnQuip is currently owed a commission on at least one sale it procured from Ricera in Concord, Ohio in February 2007.").

{¶ 53} We need not determine whether it is Florida or Italy that has the "most significant relationship" because neither state's law allows EnQuip to recover exemplary damages. Florida had a R.C. 1335.11-like statute that protected sales representatives' commissions, former F.S. 686.201.[22] It provided, like R.C. 1335.11, that if a manufacturer failed to timely pay commissions, the sales representative could bring an action for exemplary damages, *Feniger v. Cafe Aroma*, M.D.Fla. No. 2:05CV319-TAW-SPC, 2007 WL 853735, *4 (Mar. 16, 2007), citing former F.S. 686.201(3)(b). But unlike R.C. 1335.11, the principal's duty to pay commissions arose only if the parties' contract "'was not reduced to writing.'" *Id*. at *4, quoting former F.S. 686.201(3)(a). Because EnQuip's contract with TyTg is in writing, EnQuip cannot bring an action under the Florida statute. According to the Italian-law expert appointed by the trial court, Italian law quite simply does not provide for the recovery of exemplary damages for breach or termination of an agency agreement.[23]

{¶ 54} One final issue remains related to the R.C. 1335.11 claim. The trial court awarded defendants Robins & Myers, Pfaudler, and TyTg attorney's fees and court costs under R.C. 1335.11(D), which provides that "[t]he prevailing party in an action brought under this section is entitled to reasonable attorney's fees and court costs." Although EnQuip did not expressly assign error to the award,[24] given our conclusion that R.C. 1335.11 does not apply in

---

[22] On July 1, 2011, the Florida legislature repealed this statute.

[23] Expert Report of Professor Daniele U. Santosuosso, Question 22, p. 44. Elsewhere in the report Professor Santosuosso says that Article 1223 of the Italian Civil Code provides that "[d]amages for non-fulfillment or delay shall comprise both the loss suffered by the creditor and the missed earning, as long as they are an *immediate and direct consequence* of the non-fulfillment or delay." (Emphasis added.) Expert Report, Question 14, p. 34 n. 10.

[24] In its notice of appeal, EnQuip did include the trial court's June 29, 2011 order awarding the attorneys' fees among those it is appealing from.

this case, we review the award sua sponte.

**{¶ 55}** The trial court erred. In this case, Ohio lacks any meaningful relationship to the issues and the parties. So R.C. 1335.11 simply doesn't apply to the issue of exemplary damages. Division (D) of the statute allows both a sales representative to recover exemplary damages and the prevailing party to recover attorneys' fees and court costs. Just like the statute does not apply to determine whether EnQuip may recover exemplary damages, it does not apply to determine whether the defendants may recover attorney's fees and court costs related to whether EnQuip may recover exemplary damages.

### III. Conclusion

**{¶ 56}** These are our rulings on the parties' assignments of error. EnQuip's first assignment of error alleges that the trial court erred by directing a verdict in favor of TyTg on the claim in Count Four, for exemplary damages under R.C. 1335.11. This assignment of error is overruled because, in this case, Ohio law does not apply to the issue of exemplary damages. TyTg's first cross assignment of error alleges, based on the forum-selection clause in the parties' Agency Agreement, that the trial court erred by not entering judgment on the pleadings in the defendant's favor on all of EnQuip's claims. This assignment of error is sustained with respect to the claims in Counts One, Two, and Five. But it is overruled with respect to the claim in Count Four because that claim is not encompassed by the forum-selection clause. Because no claims remain, the other assignments of error and cross-assignments of error are moot and need not be addressed, *see* App.R. 12(A)(1)(c). Also, having raised the issue sua sponte, we concluded that the trial court erred by awarding attorney's fees and court costs in connection with Count Four.

**{¶ 57}** Our judgment in this case has three parts. One, the trial court's June 29, 2011

final judgment, directing a verdict for TyTg on Count Four is affirmed. Two, the judgments with respect to Counts One, Two, and Five, are reversed and vacated. The rest of the February 17 order is affirmed. Three, the trial court's June 29, 2011 order awarding attorney's fees and court costs is reversed and vacated.

{¶ 58} As a result of our judgment, no claims remain among the parties. This case is remanded for the trial court to enter the appropriate dismissal orders and to tie up any loose ends. We note that our judgment here necessarily affects other orders that the trial court has issued. Thus, for example, the court must vacate its June 1, 2011 order, stemming from Count Two's accounting claim, that TyTg make its "books" available for EnQuip to inspect. We leave it to the parties and the trial court to determine on remand what other orders must be revisited.

{¶ 59} We are keenly aware that much time, effort, and money of the parties, and the trial court, appear to have been needlessly expended. It is unfortunate in this case that Ohio law did not allow TyTg to obtain appellate review of the forum-selection matter until now. Nevertheless, *quel che è fatto è fatto*.[25]

. . . . . . . . . . . . .

GRADY, P.J., and FAIN, J., concur.

Copies mailed to:

John B. Pinney
Katherine M. Lasher
Kara A. Czanik
Matthew E. Liebson
Christine M. Haaker

---

[25]"What's done is done." Google Translate, http://translate.google.com (accessed Nov. 9, 2012).

Terry W. Posey, Jr.
Hon. Stephen Wolaver