**CIVIL AG GROUP, INC., Plaintiff,**

**v.**

**OCTAFORM SYSTEMS, INC., Defendant.**

Case No. 16–cv–2318 (WMW/SER)

United States District Court, D. Minnesota.

Signed 02/01/2017

John A. Sullivan, Kevin D. Hofman, Peterson Habicht, PA, Minneapolis, MN, for Plaintiff.

Seth J. S. Leventhal, Leventhal PLLC, Minneapolis, MN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*

Wilhelmina M. Wright, United States District Judge

This matter is before the Court on Defendant Octaform Systems, Inc.'s motion to dismiss Plaintiff Civil Ag Group, Inc.'s complaint pursuant to the doctrine of *forum non conveniens*. (Dkt. 6.) Because the forum-selection clause contained in the terms and conditions of Octaform's sales orders does not apply to the present dispute and Octaform offers no other grounds for its motion, the Court denies Octaform's motion to dismiss.

### BACKGROUND

This case involves a contract dispute between Plaintiff Civil Ag Group, Inc. ("Civil Ag Group") and Defendant Octa-

form Systems, Inc. ("Octaform").[1] Civil Ag Group is a construction company that builds hog barns. Octaform sells building components used in the construction of hog barns and manure tanks. Since 2010, Civil Ag Group purchased—among other items—Octaform's PVC Stay in Place Wall Forming Systems ("Quick Liner panels") as building materials for the construction of hog barns. Octaform's "Terms and Conditions of Purchase and Sale and Warranty" ("terms and conditions") accompanied each sale and provides, in relevant part:

14. <u>Governing Law</u>. The construction, interpretation and performance of this Agreement and all transactions, legal rights and obligations under it will be governed by the laws of British Columbia, Canada.

15. <u>Exclusive Jurisdiction</u>. The parties agree that all proceedings arising out of or in connection with any dispute concerning this Agreement, the above-referenced rights and obligations, or in connection with any matter directly or indirectly related to this Agreement, or any cause of action related thereto, shall only be instituted, heard and determined by a court of competent jurisdiction in British Columbia, and all parties irrevocably attorn to the jurisdiction of the courts of British Columbia and waive any objection which they may now or hereafter have regarding the venue of such suit, action or proceedings.

Octaform's terms and conditions also include a limited 10–year warranty on the products, along with a merger clause indicating that the terms and conditions represent the entire agreement of the parties.

In late 2012, Civil Ag Group allegedly received customer complaints about Quick Liner panels installed in hog barns. Civil Ag Group notified Octaform of the complaints and insisted that the allegedly defective Quick Liner panels required replacement. Nearly three years later, on May 29, 2015, the parties executed a "Settlement agreement for defective materials" ("Settlement Agreement"), which outlined the parties' "understanding with respect to certain issues" involving the allegedly defective Quick Liner panels. The Settlement Agreement required Octaform to ship Civil Ag Group replacement products for a negotiated amount and on a specified schedule. In addition, the Settlement Agreement provided that Octaform would give no "recommendations or advice regarding the removal and disposition of the [original products]" and instead placed sole responsibility on Civil Ag Group for "removal, disposal, installation, and covering that [Civil Ag Group or its customers] consider necessary or advisable." The parties also agreed to the following release:

9. Octaform's obligations [outlined in the Settlement Agreement] constitute Octaform's entire responsibility to [Civil Ag Group] in connection with the [allegedly defective Quick Liner panels], and you agree to release, indemnify and hold harmless Octaform . . . against and from any and all actions, causes of action, claims, demands, damages, interest, costs, expenses and compensation of any nature or kind whatsoever, whether known or unknown, which you now have or any time hereafter can, shall or may have in any way resulting or arising out of, directly or indirectly, or in any way connected with, the [allegedly defective Quick Liner panels] and your use of the Replacement Product.

Although Civil Ag Group initially believed that it was necessary to replace the allegedly defective Quick Liner panels, its customers allegedly "balked at the time and inconvenience." Civil Ag Group instead

---

1. Octaform also asserted a counterclaim in its answer to Civil Ag Group's complaint.

tendered cash payouts, offered remedial work and retained some of the replacement products. Octaform objected and informed Civil Ag Group that it would file a lawsuit unless Civil Ag Group assented to various conditions by May 26, 2016.[2]

On June 15, 2016, Civil Ag Group commenced this action for declaratory relief in Minnesota state court regarding the parties' obligations under the Settlement Agreement. Octaform removed the matter to this Court. On July 22, 2016, Octaform filed its motion to dismiss Civil Ag Group's complaint pursuant to the doctrine of *forum non conveniens* based on the application of the forum-selection clause contained in the terms and conditions of the sales orders.

## ANALYSIS

Octaform argues that the forum-selection clause in the terms and conditions of its sales orders—selecting British Columbia, Canada, as the forum for dispute resolution—mandates that the Court dismiss Civil Ag Group's complaint under the doctrine of *forum non conveniens*. Civil Ag Group counters that the forum-selection clause is inapplicable because the Settlement Agreement is a separate contract that resolves different issues and does not contain a forum-selection clause. Therefore, the initial inquiry is whether the forum-selection clause in Octaform's terms and conditions is applicable to Civil Ag Group's complaint for declaratory relief regarding the obligations of the parties under the Settlement Agreement. If not, the Court must analyze Octaform's motion to dismiss under the *forum non conveniens* doctrine.

The doctrine of *forum non conveniens* is the proper mechanism to enforce a forum-selection clause that implicates a different state or foreign forum. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, —— U.S. ——, 134 S.Ct. 568, 580, 187 L.Ed.2d 487 (2013). The doctrine of *forum non conveniens* permits a district court to decline to exercise jurisdiction and, in turn, dismiss a case when a different jurisdiction is more appropriate. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–49 & 449 n.2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). A district court has broad discretion when deciding whether to grant such a motion to dismiss. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

Because the overarching consideration of a motion to dismiss for *forum non conveniens* is promoting the interests of justice, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Constr.*, 134 S.Ct. at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (alteration in original)). When deciding whether a forum-selection clause is applicable, a district court determines: (1) whether the District of Minnesota is a proper venue, (2) whether the forum-selection clause is valid, and (3) whether to enforce the forum-selection clause. *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F.Supp.3d 1034, 1040 (D. Minn. 2015). Here, the parties dispute only whether the forum-selection clause is enforceable in this dispute.

A forum-selection clause must be applicable before it can be enforceable. *See D. Landstrom Assocs., Inc. v. Mirama*

---

**2.** Octaform represents that it filed a civil complaint in British Columbia, Canada, on June 30, 2016, but that filing is not in the record.

*Enters., Inc.*, No. 13–CV–2466, 2014 WL 359344, at *3 (D. Minn. Feb. 3, 2014) (citing *Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009)). Federal law governs the effect, if any, given to a forum-selection clause. *Stewart Org., Inc.*, 487 U.S. at 31–32, 108 S.Ct. 2239. To determine whether a forum-selection clause applies, a district court must interpret the language of the clause, *see Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003), which is done according to the plain language of the contract and the intent of the parties as expressed in the disputed clause, *see Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31–32, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004).

The forum-selection clause contained in the terms and conditions of Octaform's sales orders provides:

> 15. <u>Exclusive Jurisdiction</u>. The parties agree that all proceedings arising out of or in connection with any dispute concerning this Agreement, the above-referenced rights and obligations, or in connection with any matter directly or indirectly related to this Agreement, or any cause of action related thereto, shall only be instituted, heard and determined by a court of competent jurisdiction in British Columbia . . . .

Octaform contends that this clause must apply to the Settlement Agreement because "the connection between the sales orders . . . and the dispute in this case . . . between the buyer and the seller with regard to the quality of the products . . . is an indisputably close connection." Civil Ag Group counters that the "Sales Orders dealt with the sale and shipping of the product" and the forum-selection clause is inapplicable because the "Settlement Agreement addressed the duties of each party in resolving customer complaints." Both Octaform and Civil Ag Group parse

the language of the forum-selection clause in support of its interpretation. But the Court need not interpret the language of the forum-selection clause because the parties substituted the terms and conditions in Octaform's sales orders with the Settlement Agreement.

"A contract may be discharged by novation, that is, by the substitution of a new contract for the old agreement." 30 Williston on Contracts § 76:1 (4th ed. 2016). The Eighth Circuit has described the concept of novation as follows:

> A new executory contract between a claimant and the person charged, by which they reciprocally agree to do or not to do an act or acts not obligatory by contract or law, which will affect a legal right of either, and which, expressly or through implication, includes the settlement of the original claim, is not a mere accord, but is the substitute for the original claim or contract, which is merged in it, and is, in and of itself, binding upon the parties.

*Durasteel Co. v. Great Lakes Steel Corp.*, 205 F.2d 438, 441–42 (8th Cir. 1953) (internal quotation marks omitted). In *Durasteel*, the appellant sought damages for steel orders that the appellee-supplier repudiated. *Id.* at 439. The supplier contended that the appellant had agreed to cancel its original orders, accept replacement products and forego a claim for damages on the original orders. *Id.* The Eighth Circuit agreed and concluded that the parties had "in effect substituted a new contract for the old." *Id.* at 441. As a consequence the appellant could not "assert any rights which might have accrued to it under the original contracts. There was no reservation of any such rights when the contracts were [cancelled] for a valuable consideration [that was] mutually agreed upon." *Id.* at 443–44.

Octaform's terms and conditions applied to its sales orders.[3] The terms and conditions included a 10–year limited warranty provision in which Octaform would perform "laboratory analysis" of allegedly defective products and then repair or replace defective products in its sole discretion. The warranty provision explicitly stated—in all caps—that it served as "THE PURCHASER'S SOLE AND EXCLUSIVE REMEDY BY OCTAFORM WITH RESPECT TO THE PRODUCTS CONTAINING A MANUFACTURING DEFECT." The warranty provision also disclaimed the availability of other remedies. But when Civil Ag Group informed Octaform of allegedly defective products, rather than invoke the warranty provision, the parties executed the Settlement Agreement.

Here, as in *Durasteel*, the Settlement Agreement represents an express settlement of the dispute regarding the allegedly defective Quick Liner panels by substituting the terms of the Settlement Agreement for those of the terms and conditions in Octaform's sales orders. *See id.* The parties executed the Settlement Agreement nearly three years after the sales orders without any reference to the process prescribed by the warranty provision contained in the terms and conditions. The Settlement Agreement specified that Octaform would provide replacement products to Civil Ag Group subject to new conditions. The Settlement Agreement also provided Octaform a full release, stating that the Settlement Agreement "constitute[s] Octaform's entire responsibility to [Civil Ag Group] in connection with" the allegedly defective Quick Liner panels. No aspect of the Settlement Agreement suggests that the parties intended that Octaform would retain the right to enforce the forum-selection clause in the terms and conditions while simultaneously securing a release from liability for the products subject to the terms and conditions. *See, e.g., Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002) (explaining that a district court should avoid construing contracts in a fashion that would require "blinkered literalism, a closing of one's eyes to the obvious," which would ignore the intent of the parties and "produce nonsensical results."). Under the Settlement Agreement, Civil Ag Group relinquished its rights under the warranty provision and Octaform secured a full release from claims under the terms and conditions of the sales orders. *See Durasteel*, 205 F.2d at 441–42 (explaining that a novation occurs when contracting parties reciprocally agree to new obligatory acts and a settlement of the original dispute).[4]

3.  The record includes a sales agreement dated August 17, 2012. The parties do not dispute that Civil Ag Group was a customer of Octaform's from 2010 through at least August 2012, and neither party suggests that Octaform's terms and conditions changed over that time.

4.  Octaform's argument that the Court should read the terms and conditions of the sales orders and the Settlement Agreement *together*—effectively merging the contracts—is unavailing. The terms and conditions contained a merger clause and, but for the warranty provision, all other elements of the terms and conditions had been completed. In addition, the terms and conditions indicated that time was of the essence and the parties executed the Settlement Agreement nearly three years later. The case law Octaform cites in support of its argument is distinguishable because those cases primarily analyze circumstances in which two agreements were executed on the same day—or near in time to one another—as part of the same transaction. *See, e.g., Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (involving agreements executed on same day as part of the same overall transaction). That did not occur here.

Because the Settlement Agreement substituted the terms and conditions of the sales orders by novation—and does not include a forum-selection clause—the forum-selection clause contained in the terms and conditions is inapplicable to the present dispute. *See Altvater Gessler-J.A.*, 572 F.3d at 89 (requiring that a forum-selection clause be applicable before a district court determines whether it is enforceable). The forum-selection clause contained in the terms and conditions of Octaform's sales orders is not a basis to grant Octaform's motion to dismiss Civil Ag Group's complaint.

Without an applicable forum-selection clause, Octaform must establish that dismissal is nonetheless warranted under the *forum non conveniens* doctrine. *See Piper Aircraft Co.*, 454 U.S. at 257, 102 S.Ct. 252. When entertaining a motion to dismiss for *forum non conveniens* absent an applicable forum-selection clause, a district court first determines whether an adequate alternative forum exists. *Id.* If so, a district court balances several private- and public-interest factors. *Id.* These factors include the convenience of the parties, the convenience of witnesses and the interests of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). No rigid rule governs a district court's determination of this matter, and "[e]ach case turns on its facts." *Piper Aircraft Co.*, 454 U.S. at 249, 102 S.Ct. 252 (alteration in original) (internal quotation marks omitted). A district court has broad discretion when deciding whether to dismiss based on *forum non conveniens. Id.* at 257, 102 S.Ct. 252.

Octaform contends that British Columbia, Canada, is an adequate alternative forum for this dispute. But Octaform provides little—if any—argument addressing the several private- and public-interest factors the Court must balance. Octaform submitted a declaration from its Director of Finance, stating that it has "no offices, inventory, bank accounts, real estate, personal property, employees, or agents in the State of Minnesota." But the same declaration states that Octaform "sells its products to customers in Canada, the United States, and internationally." Octaform has not met its burden of establishing that dismissal is warranted under the doctrine of *forum non conveniens.*[5]

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Octaform's motion to dismiss Civil Ag Group's complaint pursuant to the doctrine of *forum non conveniens*, (Dkt. 6), is **DENIED.**

---

5. Octaform's argument that the first-to-file rule should not apply also is unavailing. The first-to file rule is a presumptive preference to allow the first of two lawsuits to proceed. *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005–07 (8th Cir. 1993). Octaform argues that exceptions to the first-to-file rule apply in favor of its lawsuit in British Columbia, Canada. But even if that is so, an analysis of the private- and public-interest factors inherent in a *forum non conveniens* analysis would be required. Such analysis cannot be performed on this record.